No. 105,137

In the Matter of CONRAD E. DOUDIN, *Respondent*.

(249 P.2d 1190)

Opinion filed April 15, 2011.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*D. Lee McMaster*, of Law Office of D. Lee McMaster, of Wichita, argued the cause, and *Conrad E. Doudin*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Conrad E. Doudin, of Wichita, an attorney admitted to the practice of law in Kansas in 1994.

On January 11, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent's motion for continuance, dated January 25, 2010, was granted by order dated January 29, 2010. The respondent filed an answer on August 9, 2010, and on August 14, 2010, he mailed a probation plan to the office of the Disciplinary Administrator and the hearing panel.

On August 18, 2010, a panel of the Kansas Board for Discipline of Attorneys conducted a hearing on the formal complaint at which the respondent was personally present and was represented by counsel. The parties submitted a joint stipulation of facts to the hearing panel.

Following the hearing, the panel determined that respondent had violated KRPC 1.1 (2010 Kan. Ct. R. Annot. 406) (competence); 1.3 (2010 Kan. Ct. R. Annot. 422) (diligence); 1.4(a) (2010 Kan. Ct. R. Annot. 441) (communication); 1.15 (2010 Kan. Ct. R. Annot. 505) (safekeeping property); 3.2 (2010 Kan. Ct. R. Annot. 539) (expediting litigation); 8.1(b) (2010 Kan. Ct. R. Annot. 594) (failure to respond to lawful demand for information from disci-

plinary authority); Kansas Supreme Court Rule 207(b) (2010 Kan. Ct. R. Annot. 308) (failure to cooperate in disciplinary investigation); Kansas Supreme Court Rule 211(b) (2010 Kan. Ct. R. Annot. 327) (failure to file answer in disciplinary proceeding). The panel filed a final hearing report, the relevant portions of which are as follows:

## "FINDINGS OF FACT

. . . .

### "DA10328

"2. In 2006, Reynaldo Cantu retained the Respondent to represent him in an effort to modify visitation with his child. The Respondent and Mr. Cantu had a disagreement about whether Mr. Cantu continued to owe the Respondent for previous work performed. Regardless, in October, 2006, the Respondent agreed to file a motion to modify visitation. The Respondent failed to promptly file the motion. The Respondent did not file the motion until May 11, 2007.

### "DA10343

"3. In July, 2007, Cecelia Smith retained the Respondent to represent her in a divorce for $500.00. Mrs. Smith paid the Respondent with two checks in the amount of $250.00 each. One check was cashed, the other check was not. The Respondent did not immediately enter his appearance in behalf of Mrs. Smith. The Respondent did not keep Mrs. Smith apprised of the hearings, nor did he keep her apprised of the status of her case. Eventually, Mrs. Smith terminated the Respondent's representation. Thereafter, the Respondent refunded $500.00 to Mrs. Smith.

### "DA10561

"4. In December, 2007, Denise Ziegler-Mellott retained the Respondent to represent her in a bankruptcy case. On February 22, 2008, the Respondent filed a chapter 7 bankruptcy petition. Thereafter, on June 2, 2008, the Court discharged Ms. Ziegler-Mellott in bankruptcy. Ms. Ziegler-Mellott filed a disciplinary complaint against the Respondent. The Respondent was notified of the disciplinary complaint. David Moses, a member of the Wichita Ethics and Grievance Committee, was assigned to investigate the complaint.

"5. On July 18, 2008, Mr. Moses wrote to the Respondent and requested that he provide a response within 10 days. The Respondent failed to provide a timely response. Approximately three weeks later, the Respondent retained counsel to represent him in the disciplinary proceedings.

"6. By letter, counsel for the Respondent assured Mr. Moses that the Respondent would provide a response to the complaint by August 29, 2008. The Respondent failed to provide a response to the complaint by August 29, 2008.

"7. On January 8, 2009, Mr. Moses wrote to counsel for the Respondent and required that the Respondent's response be provided no later than January 12, 2009. On January 12, 2009, the Respondent provided Mr. Moses with a response to Ms. Ziegler-Mellott's complaint.

"8. On January 15, 2009, Mr. Moses wrote to counsel for the Respondent. In the letter, Mr. Moses requested that the Respondent provide a copy of the Respondent's file pertaining to Ms. Ziegler-Mellott's bankruptcy, a copy of the Respondent's payroll records from the Respondent's office from January, 2008, through July 8, 2008, and all personnel and payroll records pertaining to Ms. Ziegler-Mellott.

"9. Mr. Moses and counsel for the Respondent spoke by phone regarding Mr. Moses' request. Mr. Moses asked to have the information delivered to his office. Counsel for the Respondent insisted that Mr. Moses come to counsel's office to retrieve the files. Mr. Moses never received the requested records.

"10. On February 10, 2009, Mr. Moses wrote to counsel for the Respondent, reminding him that he had previously requested that he provide certain documentation in behalf of the Respondent. Mr. Moses insisted that he receive the information no later than February 12, 2009. Mr. Moses never received the requested information.

## "DA10732

"11. A contractor that owed Ben and Melissa Crabtree's lawn care business $70,000, failed to pay the bill, causing the business to be unable to meet its obligations. Thereafter, in December, 2008, Mr. and Mrs. Crabtree retained the Respondent to file a bankruptcy case for the business and to send a demand letter to the contractor.

"12. On December 9, 2008, Mr. and Mrs. Crabtree met with the Respondent and provided him with paperwork. At that time, a written fee agreement was executed. The agreement required a total payment of $1,300.00 with $758.00 identified as a 'fixed minimum fee' and the remaining $542.00 identified as 'advanced costs' to be 'placed in attorney's trust account.' Mr. and Mrs. Crabtree paid the Respondent $1,300.00 with two money orders. The receptionist who received the $1,300.00 told Mr. and Mrs. Crabtree that she did not know what to do with the money orders. The receptionist told Mr. and Mrs. Crabtree that she would deposit the money orders into her personal bank account.

"13. Between December 9, 2008, and December 24, 2008, Mr. and Mrs. Crabtree personally entered into negotiations with the contractor. On December 24, 2008, the contractor paid Mr. and Mrs. Crabtree's business in full. Because of the payment, Mr. and Mrs. Crabtree no longer needed to pursue the protections offered by bankruptcy for their company.

"14. On December 26, 2008, Mr. and Mrs. Crabtree notified the Respondent that they no longer needed his services. In early January, 2009, the Respondent informed Mr. and Mrs. Crabtree that they would receive a partial refund of the

money paid to him. Additionally, he agreed to provide Mr. and Mrs. Crabtree with a copy of the demand letter.

"15. Because Mr. and Mrs. Crabtree did not receive a refund or a copy of the demand letter, February 10, 2009, they filed a complaint against the Respondent. After the disciplinary complaint was filed, the Respondent provided Mr. and Mrs. Crabtree with a full refund of the $1,300.00. The refund check was not drawn on the Respondent's trust account, rather it was drawn on the Respondent's operating account. The Respondent never provided Mr. and Mrs. Crabtree with a copy of the demand letter.

"16. On February 19, 2009, the Disciplinary Administrator wrote to the Respondent, enclosed a copy of Mr. and Mrs. Crabtree's complaint, and requested that he provide a response to the complaint within 20 days.

"17. On February 23, 2009, Jeffrey Jordan, the Chairman of the Wichita Ethics and Grievance Committee, wrote to the Respondent regarding Mr. and Mrs. Crabtree's complaint. Mr. Jordan requested that the Respondent provide a timely response to the complaint.

"18. On February 26, 2009, Mr. Moses, the attorney appointed to investigate this complaint, wrote to the Respondent and requested that the Respondent provide his written response and a complete copy of his file within 10 days.

"19. On March 12, 2009, Mr. Moses wrote to the Respondent for a second time. In that letter, Mr. Moses requested that the Respondent provide a written response and a complete copy of his file by March 20, 2009.

"20. On June 9, 2009, Mr. Moses wrote to the Respondent for a third time. In that letter, Mr. Moses informed the Respondent that he would be completing his investigation and if the Respondent wanted his response to be considered, it would have to be received by June 12, 2009.

"21. On June 10, 2009, counsel for the Respondent provided the Respondent's response to Mr. and Mrs. Crabtree's complaint.

"22. On June 15, 2009, Mr. Moses wrote to counsel for the Respondent and requested that he provide the Respondent's file, billing records, trust account records, and confirmation that Mr. and Mrs. Crabtree's money orders were deposited into the Respondent's trust account. Mr. Moses never received the requested information.

"DA10750

"23. On March 19, 2007, Luther M. Patton died testate. Luther's son, Larry Patton, retained the Respondent to probate the estate. Larry Patton paid the Respondent $500.00 for the representation. The Respondent requested that Larry Patton provide a list of assets and debts of the estate. On March 30, 2007, Larry Patton provided the requested information to the Respondent.

"24. Neither Larry Patton nor his family heard anything from the Respondent until October 29, 2007. At that time, Larry Patton came to the Respondent's office and signed the petition for informal administration and a family settlement agreement.

"25. The Respondent did not file the petition and the agreement until December 21, 2007. The Respondent failed to attach any exhibits, failed to place an advertisement in the newspapers as a notice to creditors, and failed to have Larry Patton execute an oath as executor. No testamentary letters were ever issued to Larry Patton.

"26. Throughout 2008, Larry Patton attempted to learn the status of the probate case from the Respondent. The Respondent assured Mr. Patton that 'all was well.'

"27. Later, Larry Patton approached James L. Hargrove and asked general questions regarding the probate of an estate. As a result, Mr. Hargrove looked into the Patton estate and contacted the Honorable Charles M. Hart, the judge assigned to hear the probate case.

"28. On March 4, 2009, Judge Hart contacted the Respondent and requested that he deliver the file and the $500 retainer less the filing fee to Mr. Hargrove. Mr. Hargrove received the file and a refund of the fee. The refund check was not drawn from the Respondent's trust account.

"29. Mr. Hargrove determined that the petition for informal administration and a family settlement agreement should not have been filed. Thereafter, Mr. Hargrove dismissed the probate case.

"30. The Respondent should not have required a retainer, as he should have been paid through the estate by order of the court. Additionally, the Respondent should not have agreed to handle a probate matter as he had no experience in probate cases.

"31. On March 17, 2009, Mr. Hargrove filed a complaint against the Respondent. On March 20, 2009, the Disciplinary Administrator wrote to the Respondent, enclosed a copy of Mr. Hargrove's complaint, and requested that the Respondent provide a written response to the complaint within 20 days.

"32. On March 26, 2009, Mr. Moses, the attorney assigned to investigate Mr. Hargrove's complaint, wrote to the Respondent and requested that the Respondent provide a written response to Mr. Hargrove's complaint within 10 days.

"33. On June 9, 2009, Mr. Moses wrote to the Respondent. Mr. Moses informed the Respondent that if he wanted his response considered he would have to forward it by June 12, 2009.

"34. The Respondent never provided a written response to Mr. Hargrove's complaint.

"35. To further the investigation of DA10328, DA10732, and DA10750, the Disciplinary Administrator's auditor contacted the Respondent to audit his attorney trust account. The auditor requested that the Respondent schedule an appointment to allow the auditor to conduct the audit. The Respondent failed to cooperate by scheduling the appointment. As a result of the Respondent's lack of cooperation, an audit of his attorney trust account was never completed.

## "CONCLUSIONS OF LAW

"1. Based upon the stipulation of the Respondent and the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC

1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 3.2, KRPC 8.1, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent violated KRPC 1.1 in his representation of the estate of Luther M. Patton when he unnecessarily filed a probate case. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his clients in this case. Specifically, the Respondent failed to provide diligent representation to Mr. Cantu, Ms. Smith, and the Patton estate. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to adequately inform Ms. Smith, Mr. and Mr. Crabtree, and Larry Patton of the status of the representations. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. Lawyers must keep the property of their clients safe. *See* KRPC 1.15. In this case, the Respondent failed to properly safeguard his client's property when he failed to deposit unearned fees paid by Mr. and Mrs. Crabtree and Larry Patton into his attorney trust account. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 1.15.

"6. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In representing Ms. Smith, the Respondent failed to expedite Ms. Smith's case by failing to timely enter his appearance. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"7. Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to forward a written response to the initial complaint filed by Larry Patton—he had been instructed to do so in writing

by the Disciplinary Administrator and by the investigator. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by Larry Patton as requested by the Disciplinary Administrator and the investigator, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b). The Hearing Panel also concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) when he failed to cooperate with the Disciplinary Administrator's auditor in scheduling and conducting an audit of the Respondent's attorney trust account.

"8. The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b).

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. Additionally, the Respondent violated his duty to his clients to properly safeguard their property. Finally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused potential injury to his clients and actual injury to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A *Pattern of Misconduct.* The Respondent engaged in a pattern of misconduct—five separate complaints were filed against the Respondent. Much of the Respondent's misconduct was repeated misconduct.

"*Multiple Offenses.* The Respondent committed multiple offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 3.2, KRPC 8.1, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent failed to cooperate in the investigation of Larry Patton's complaint. Additionally, the Respondent failed to file an Answer in this case. Finally, the Respondent failed to cooperate with the Disciplinary Administrator's auditor in scheduling and conducting an audit of the Respondent's attorney trust account. As such, the Hearing Panel concludes that the Respondent obstructed the disciplinary proceeding.

"*Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in the State of Kansas in 1994. As such, at the time the misconduct commenced, the Respondent had been practicing law for 13 years. The Hearing Panel concludes that 13 years of practice constitutes substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"*Absence of a Dishonest or Selfish Motive.* It does not appear that the Respondent's misconduct was motivated by dishonesty or selfishness. As such, the Respondent's lack of a dishonest or selfish motive mitigates the misconduct.

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent has certainly suffered personal and emotional problems detailed in his testimony. While the Hearing Panel does not believe that the Respondent's personal problems contributed to his trust account violations, it appears that his personal problems may have contributed to the Respondent's lack of diligence and communication.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent entered into a stipulation and admitted to many of the alleged violations. As such, the Hearing Panel concludes that the Respondent generally cooperated.

"*Remorse.* At the hearing, the Respondent expressed remorse for engaging in the misconduct.

"In addition to the abovecited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.52 Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be indefinitely suspended. Counsel for the Respondent recommended that the Respondent's request for probation pursuant to Kan. Sup. Ct. R. 211(g) be granted and that he be subject to supervision for a period of three years.

"Kan. Sup. Ct. R. 211(g)(3) dictates when a Hearing Panel is permitted to recommend probation in a disciplinary case, as follows:

'The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

The Hearing Panel concludes that probation is not appropriate in this case. The Respondent failed to provide his plan of probation at least 10 days prior to the hearing on the Formal Complaint. The Respondent's plan of probation is dated August 14, 2010, four days prior to the hearing on this matter. The Respondent's plan is not workable, substantial, or sufficiently detailed to correct the misconduct in this case. The Respondent failed to put the proposed plan of probation into effect prior to the hearing on the Formal Complaint. The Respondent testified that it had been four or five months since he had seen his counselor. Finally, placing the Respondent on probation is not in the best interests of the legal profession or the citizens of the State of Kansas.

"Before making a recommendation in this case, the Hearing Panel is compelled to address two matters raised at the hearing on the Formal Complaint.

"First, the Hearing Panel heard testimony from the Respondent and a proffer of evidence from counsel for the Respondent and the Deputy Disciplinary Administrator regarding whether the Respondent cooperated in the investigations of Ms. Ziegler-Mellott's complaint and Mr. and Mrs. Crabtree's complaint. The gist of the evidence is that shortly after the Ziegler-Mellott complaint was filed and well before the Crabtree and Hargrove complaints were filed, the Respondent retained D. Lee McMaster to represent him in the disciplinary proceedings. As a result, the attorney investigator appointed to investigate these matters contacted Mr. McMaster to obtain information from the Respondent. According to the proffer, Mr. McMaster did not forward the requested materials to the investigator due to a personality conflict between the two of them. The Hearing Panel carefully considered whether the actions of counsel should be imputed to the Respondent and concluded that the Respondent acted as the Disciplinary Administrator and the Kansas Board for Discipline of Attorneys would hope—he hired an attorney to represent him and that he is not responsible for the actions or inaction of his counsel. Accordingly, the Hearing Panel concludes that the Respondent did not violate KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) regarding the Ziegler-Mellott case and the Crabtree case.

"Second, during his closing argument, counsel for the Respondent argued that as attorneys we need to 'take care of our own.' As a result of Mr. McMaster's comments, the Hearing Panel feels compelled to clarify its role in the disciplinary system. The Hearing Panel is generally charged with three jobs. The Hearing Panel must listen to all of the evidence and make factual findings. Next, the Hearing Panel must apply those facts to the rules and determine whether the Respondent has violated any of the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules. Finally, the Hearing Panel must consider the rule violations in light of the American Bar Association's Standards for Imposing Lawyer Sanctions and make a recommendation to the Kansas Supreme Court. In rendering a recommendation, the Hearing Panel must be mindful that the public and the legal profession deserve to be protected from attorneys who have caused harm. The Hearing Panel is not required nor is it permitted to shield a lawyer from the effect of failing to comply with his duties as an attorney.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of one year. The Hearing Panel further recommends that the Respondent undergo a hearing pursuant to Kan. Sup. Ct. R. 219 prior to consideration of reinstatement.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence,

the findings of the disciplinary panel, and the arguments of the parties. From this, we determine whether violations of the KRPC exist and, if they do, what discipline should be imposed. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). Attorney misconduct must be established by clear and convincing evidence. *In re Patterson*, 289 Kan. 131, 133-34, 209 P.3d 692 (2009); Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *Patterson*, 289 Kan. at 134 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The evidence presented in this case, including the parties' joint stipulation of facts, clearly supports the KRPC and Supreme Court Rules violations identified by the panel. As a practical matter, we find those violations are sufficient to warrant the imposition of the sanction set forth below. Nevertheless, we pause to comment on the panel's determination that respondent did not violate KRPC 8.1(b) and Supreme Court Rule 207(b) in the Ziegler-Mellott and Crabtree cases because he had retained counsel.

We certainly understand that the Disciplinary Administrator and the Kansas Board for Discipline of Attorneys would want to encourage attorneys faced with a disciplinary complaint to retain counsel. However, every attorney admitted to practice law in this state is charged with the individual, independent responsibility "to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters." Supreme Court Rule 207(b) (2010 Kan. Ct. R. Annot. 308). A respondent who retains an attorney to represent him or her in a disciplinary proceeding is not relieved of the responsibilities in KRPC 8.1(b) and Supreme Court Rule 207(b) to cooperate with and provide information to the Disciplinary Administrator. Retaining counsel simply reassigns those responsibilities to the attorney who is acting on respondent's behalf. Retained counsel must comply with those duties just as thoroughly as if respondent is communicating directly with the Disciplinary Administrator's office. It

is only under the unusual circumstance when respondent could not reasonably know that retained counsel was violating the rules as respondent's representative that respondent may argue he or she should be insulated from retained counsel's failure to comply. In other words, contrary to the panel's suggestion, rules violations by a retained attorney may be imputed to the respondent unless the respondent demonstrates he or she could not reasonably know that retained counsel was obstructing the investigation.

As noted, the hearing panel recommended that respondent be sanctioned with a 1-year suspension with the requirement of a reinstatement hearing. Respondent asked that he be placed on probation under the plan he had submitted to the hearing panel. As noted by the hearing panel, respondent had not complied with our rules governing probation at the time of the hearing. See Supreme Court Rule 211(g)(3) (2010 Kan. Ct. R. Annot. 327). Even at the hearing before this court, respondent had yet to implement the plan. Moreover, we agree with the hearing panel's assessment that probation is not appropriate for the respondent.

"The recommendation of the panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Supreme Court Rule 212(f) (2010 Kan. Ct. R. Annot. 345). The number and nature of respondent's violations indicate an inability or unwillingness to accept and perform the most basic and fundamental responsibilities of an attorney. We believe that to adequately protect the public the respondent should be sanctioned with an indefinite suspension. Prior to being reinstated, respondent will need to demonstrate that he has adequately addressed the mental and emotional problems he claims to suffer and that he has a working knowledge of client trust accounts and law office financial management.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Respondent, Conrad E. Doudin, be and he is hereby indefinitely suspended from the practice

of law in accordance with Supreme Court Rule 203(a)(2) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that Respondent will comply with Rule 218 (2010 Kan. Ct. R. Annot. 370) and will undergo a Supreme Court Rule 219 (2010 Kan. Ct. R. Annot. 370) hearing prior to being readmitted to practice law in Kansas.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the Respondent and that this opinion be published in the official Kansas Reports.