(350 P.3d 1)
No. 111,319

WILLIAM L. SCAIFE, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed May 29, 2015.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Edmond Brancart*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MCANANY, J., and BUKATY, S.J.

POWELL, J.: William L. Scaife appeals the summary denial of his motion filed pursuant to K.S.A. 60-1507. Scaife argues the district court improperly denied his motion because (1) the court erroneously determined it was untimely and (2) it was manifest injustice for the court to summarily deny his timely motion without an evidentiary hearing. Because we agree with the district court that Scaife's motion was untimely, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are not in dispute. Scaife was convicted by a jury of (1) murder in the first degree, (2) attempted murder in the first degree, (3) two counts of aggravated robbery, and (4) felony fleeing to elude police. On direct appeal, the Kansas Supreme Court affirmed every conviction and sentence except the court vacated and remanded for retrial the conviction of murder in the first degree. *State v. Scaife*, 286 Kan. 614, 623, 186 P.3d 755 (2008). The Kansas Supreme Court announced its opinion on July 3, 2008, and issued its mandate on September 24, 2008. Scaife did not petition for writ of certiorari with the United States Supreme Court.

On December 31, 2008, upon remand to the district court, Scaife entered into a plea agreement in which he pled guilty to a reduced charge of voluntary manslaughter, agreed to accept a sentence under the Kansas Sentencing Guidelines Act, and waived his right to appeal. The district court accepted Scaife's plea and sentenced him to a guideline sentence on January 15, 2009. In accordance with his waiver, no direct appeal was filed by Scaife.

On January 6, 2010, Scaife filed his present K.S.A. 60-1507 motion in Wyandotte County District Court, alleging: (1) Scaife's original trial attorney was wrongly disqualified in violation of Scaife's rights under the Sixth and Fourteenth Amendments to the United States Constitution, (2) Scaife's replacement counsel was ineffective during Scaife's trial and direct appeal in violation of Scaife's Sixth Amendment rights, and (3) a fatal variance existed between the information and the evidence produced at trial in violation of Scaife's Sixth and Fourteenth Amendment rights.

On December 12, 2011, after an unexplained delay of nearly 2 years, the district court summarily dismissed Scaife's motion solely because the motion had not been filed prior to the 1-year statutory deadline pursuant to K.S.A. 60-1507(f). Scaife appealed the district court's dismissal, and after a series of procedural delays—the reasons are immaterial—our court reinstated Scaife's appeal on March 13, 2014.

## DID THE DISTRICT COURT ERR IN SUMMARILY DISMISSING SCAIFE'S K.S.A. 60-1507 MOTION AS UNTIMELY?

Scaife's sole issue on appeal challenges the district court's finding that his motion filed under K.S.A. 60-1507 was untimely. Significantly, Scaife does not argue that the motion, if untimely, should be reviewed to prevent manifest injustice but argues it was manifest injustice for the district court to deny him an evidentiary hearing on a timely motion. Accordingly, he has abandoned any such claim. See *State v. Gardner*, 10 Kan. App. 2d 408, 413, 701 P.2d 703, *rev. denied* 237 Kan. 888 (1985).

### Standard of Review

Because the facts are not in dispute and resolution of this issue involves an interpretation of a statute, which is a question of law, our review is unlimited. *State v. Jefferson*, 287 Kan. 28, 33, 194 P.3d 557 (2008). The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008). Our duty is to ascertain that intent through the statutory language used and give ordinary words their ordinary

meaning. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). However, when the meaning of a statute is unclear, "we may consider the provisions of the entire act with a view toward reconciling and bringing them into harmony. [Citation omitted.] [We] always strive[] for a reasonable . . . construction that avoids an unreasonable or absurd result. [Citation omitted.]" *Baker v. State*, 297 Kan. 486, 488, 303 P.3d 675 (2013).

*Analysis*

K.S.A. 60-1507(a) gives prisoners the right to collaterally attack their sentences:

"*Motion attacking sentence.* A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution or laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may, pursuant to the time limitations imposed by subsection (f), move the court which imposed the sentence to vacate, set aside or correct the sentence."

However, there is a 1-year time limit for prisoners to bring such an action:

"*Time limitations.* (1) Any action under this section must be brought within one year of: (i) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (ii) the denial of a petition for writ of certiorari to the United States supreme court or issuance of such court's final order following granting such petition.

"(2) The time limitation herein may be extended by the court only to prevent a manifest injustice." K.S.A. 60-1507(f).

Supreme Court Rule 183 (2014 Kan. Ct. R. Annot. 286) governs procedures applicable to K.S.A. 60-1507 motions:

"(c) **When Remedy May Be Invoked.**
(1) The provisions of K.S.A. 60-1507 may be invoked only by a person in custody claiming the right to be released.
(2) A motion to vacate, set aside, or correct a sentence may not be filed while an appeal from the conviction and sentence is pending or during the time within which an appeal may be perfected.
(3) A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal.

(4) Unless the court extends the time to prevent manifest injustice, a motion under K.S.A. 60-1507 must be filed not later than one year after the later of:
  (A) the date the mandate is issued by the last appellate court in this state which exercises jurisdiction on a movant's direct appeal or the termination of the appellate court's jurisdiction; or
  (B) the date the United States Supreme Court denies a petition for the writ of certiorari from the movant's direct appeal or issues its final order after granting the petition."

As is clear from the language quoted above, any prisoner in custody under a sentence of a court of general jurisdiction may challenge his confinement and sentence, provided the challenge is brought either (a) within 1 year from the final order of the last appellate court to exercise jurisdiction on a direct appeal or (b) within 1 year from the termination of appellate jurisdiction. However, no challenge may be brought while a direct appeal is pending or during the time within which an appeal may be perfected.

Scaife contends the 1-year statutory time limit within which to bring his K.S.A. 60-1507 motion commenced 14 days after he was sentenced for voluntary manslaughter by the district court on remand. See K.S.A. 2014 Supp. 22-3608(c) (14 days to perfect appeal after judgment of the district court). Citing K.S.A. 60-1507(f)(1)(i), Scaife contends that appellate jurisdiction terminated 14 days after the January 15, 2009, sentencing date for his voluntary manslaughter conviction, because he never exercised his right to file a direct appeal of his sentence. Therefore, under Scaife's interpretation of K.S.A. 60-1507(f), he had until January 29, 2010, to file his motion, rendering his K.S.A. 60-1507 motion submitted on January 6, 2010, timely. Unfortunately, Scaife fails to cite caselaw to support his reading of K.S.A. 60-1507(f).

The State counters that the 1-year statutory period commenced 90 days after the Kansas Supreme Court affirmed Scaife's convictions and that the vacated first-degree murder conviction is not relevant to the triggering criteria found in K.S.A. 60-1507. The State reasons that once our Supreme Court issued the mandate on September 24, 2008, Scaife's convictions could not be appealed any further after the 90-day period during which Scaife could seek certiorari from the United States Supreme Court had expired.

Thus, the State contends K.S.A. 60-1507(f)(1)(ii) controls, and the 1-year statutory period commenced on December 28, 2008—90 days following the Kansas Supreme Court's mandate in *Scaife*, 286 Kan. 614. Like Scaife, the State cites no caselaw in making this argument.

Fortunately, our Supreme Court and various panels of this court have considered similar questions which are helpful to our analysis. The most relevant for our purposes is *Baker*, in which the defendant initially directly appealed his conviction and sentence for first-degree murder. The Supreme Court affirmed the conviction but vacated the sentence and remanded the entire case for resentencing. After receiving a new sentence on remand, Baker did not file a direct appeal. Within 1 year from when he was resentenced on remand—but more than 1 year after the Supreme Court's opinion affirming his conviction had become final—Baker filed a 60-1507 motion, alleging he received ineffective assistance from his trial counsel. The State filed a response, arguing that Baker's motion was untimely under K.S.A. 60-1507(f)(1). The district court agreed and dismissed the petition.

On appeal, our court reversed, finding that because Baker's motion was filed within 1 year from when appellate jurisdiction over his resentencing had terminated, the motion was timely filed under K.S.A. 60-1507(f)(1). *Baker v. State*, 42 Kan. App. 2d 949, 951-54, 219 P.3d 827 (2009). The State sought review by the Supreme Court, which affirmed our court:

"K.S.A. 60-1507(a) affords relief only to a 'prisoner in custody *under sentence.*' (Emphasis added.) If Baker was not 'under sentence' for the purpose of K.S.A. 60-1507 between the date the mandate issued (July 5, 2006) and the date he was resentenced (December 21, 2006), then the limitation period of K.S.A. 60-1507(f)(1)(i) would apply during a time period a movant could not have sought relief. In this case, the result would reduce the legislatively determined 1-year time limitation to less than 7 months." 297 Kan. at 489.

However, our Supreme Court stopped short of holding that Baker was not a prisoner in custody under sentence, relying instead on Supreme Court Rule 183, which prohibits the simultaneous pursuit of a direct appeal and a motion under K.S.A. 60-1507 and prohibits filing such a motion during the time within which an

appeal may be perfected. 297 Kan. at 489-90; Rule 183(c)(2) (2014 Kan. Ct. R. Annot. 285); see also *Swenson v. State*, 284 Kan. 931, 940, 169 P.3d 298 (2007) (simultaneous direct appeal and 1507 motion prohibited). The court reasoned that because Baker was prohibited from filing his K.S.A. 60-1507 motion between the time the court remanded for resentencing and the time Baker's right to appeal his new sentence upon remand expired, if the 1-year time limit clock started running from the earlier date (the date the court remanded for resentencing), then Baker's 1-year time limitation would have been reduced to less than 7 months. *Baker*, 297 Kan. at 489-90. Consequently, the court adopted the latter date—the date Baker's right to appeal expired—as the date the 1-year limitation clock began to run. 297 Kan. at 491-92.

Also significant was the court's favorable view of now Chief Judge Malone's concurring opinion in the Court of Appeals' decision:

"K.S.A. 60-1507(a) provides that '[a] prisoner in custody under sentence of a court of general jurisdiction . . . may, pursuant to the time limitations imposed by subsection (f), move the court which imposed the sentence to vacate, set aside or correct the sentence.' In his concurrence, Judge Malone reasons that K.S.A. 60-1507(a) did not allow Baker to file his motion before resentencing because he was not 'in custody under sentence of a court of general jurisdiction.' *Baker*, 42 Kan. App. 2d at 953-54 (Malone, J., concurring).

"Judge Malone's concurring opinion has merit. . . . [T]he Court of Appeals has held that K.S.A. 60-1507 'clearly contemplates that *the sentence* being attacked is the one resulting in the present custody.' (Emphasis added.) *Johnson v. State*, 4 Kan. App. 2d 573, 574, 608 P.2d 1044 (1980). The statute does not permit relief where the movant is not in custody under the sentence he or she is attempting to challenge. 4 Kan. App. 2d at 574." *Baker*, 297 Kan. at 491.

The upshot of the Supreme Court's *Baker* decision is that because the defendant's sentence for a single conviction had been vacated and remanded for resentencing at the conclusion of the direct appeal, any issues relating to that sentence were still appealable, meaning appellate jurisdiction had not terminated under Supreme Court Rule 183(c) (2014 Kan. Ct. R. Annot. 285) thereby barring a motion under K.S.A. 60-1507, until the conclusion of the 14-day period after the defendant's resentencing. Moreover, a motion under K.S.A. 60-1507 would have been premature because

the defendant was not yet *a prisoner in custody under sentence.* Only until he was resentenced did he become a prisoner in custody under sentence.

Although we can apply the principles from *Baker* to the present case, we observe that Scaife is not similarly situated to Baker in a number of respects. Unlike Baker: (1) Scaife was charged with multiple offenses; (2) all of Scaife's convictions and sentences were affirmed but for the primary count, murder in the first degree; and (3) there was finality with respect to the affirmed convictions to which Scaife's motion pertains. These facts suggest, unlike in *Baker*, that when the Supreme Court issued its mandate on September 24, 2008, Scaife was free at that time to pursue a motion under K.S.A. 60-1507 to challenge any irregularities relating to his affirmed convictions and sentences.

It is well established that each charge in a case is to be considered its own information, meaning the final result in the affirmed convictions and sentences is unaffected by the reversal of the first-degree murder conviction and vice versa. See *State v. Hunt*, 8 Kan. App. 2d 162, 166, 651 P.2d 967 (1982); PIK Crim. 4th 68.060, Multiple Counts—Verdict Instruction; see also *State v. Beach*, 275 Kan. 603, 622, 67 P.3d 121 (2003) (inconsistent verdicts on multiple counts permitted). Therefore, Scaife became a prisoner in custody under a sentence at the time the mandate was issued on the affirmed convictions and sentences, notwithstanding the remand on the first-degree murder charge. Also, pursuant to Supreme Court Rule 183(c), appellate jurisdiction terminated upon the issuance of the mandate as to the affirmed convictions and sentences. Therefore, Scaife could have filed his present motion without running afoul of the prohibition against filing a simultaneous direct appeal and motion under K.S.A. 60-1507 and the prohibition against filing a motion under K.S.A. 60-1507 within the time appellate jurisdiction could be perfected.

As an aside, we note this rule may not have applied to sentences in multiple conviction cases until recently. The longstanding rule had been that multiple sentences from multiple counts in a single case were considered a single sentence, *State v. Woodbury*, 133 Kan. 1, 2, 298 Pac. 794 (1931), meaning that if one or more sen-

tences in a multiple count case had been vacated, the sentencing court on remand had the power to alter the original sentence even on the unaffected counts. See *State v. Snow*, 282 Kan. 323, 342, 144 P.3d 729 (2006). This suggests appellate jurisdiction still may have existed over the unaffected counts. However, this rule was subsequently abrogated by our Supreme Court. *State v. Guder*, 293 Kan. 763, 766-67, 267 P.3d 751 (2012) (disapproving *Snow*). In *Guder*, the court held that with the enactment of the Kansas Sentencing Guidelines Act, sentencing courts were prohibited from modifying legal sentences except in narrow circumstances, one of which was when the defendant's primary conviction had been overturned. 293 Kan. at 766-67. Another narrow exception occurs when a defendant's probation is revoked. *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001) (upon revocation of probation, court may impose lesser sentence).

However, the retention by the sentencing court of the power to modify a legal sentence in certain instances does not necessarily mean that a defendant is not a prisoner in custody under sentence or that appellate jurisdiction remains. In the context of probation revocations, our court has held the 1-year time limit for a K.S.A. 60-1507 motion challenging the defendant's underlying conviction and sentence began when the mandate on the direct appeal was issued or when appellate jurisdiction terminated upon a defendant's failure to file a direct appeal to his or her underlying conviction and sentence, meaning that a defendant could only challenge aspects of his probation revocation in a subsequent K.S.A. 60-1507 motion. *Wilkerson v. State*, 38 Kan. App. 2d 732, 734, 171 P.3d 671 (2007). In our view, the same principle applies to cases, such as this one, where only the defendant's primary conviction has been vacated.

Therefore, pursuant to *Baker* and Supreme Court Rule 183(c), Scaife was free to pursue his present motion as of September 24, 2008, because the mandate on his direct appeal had been issued and appellate jurisdiction had terminated as to those affirmed convictions and sentences, the remand on the first-degree murder charge notwithstanding. Moreover, Scaife became a prisoner in custody under a sentence at the same time. See generally *Rawlins*

*v. State,* 39 Kan. App. 2d 666, 669, 182 P.3d 1271 ("in custody under sentence of a court" broadly construed to mean any restraint of liberty imposed by court order), *rev. denied* 286 Kan. 1179 (2008). Accordingly, the 1-year time limit within which Scaife was free to file his present 60-1507 motion ended on September 24, 2009, months prior to the date he actually filed his motion.

With respect to the remaining conviction of voluntary manslaughter, the result is somewhat different. Our Supreme Court reversed Scaife's original first-degree murder conviction and remanded for a new trial, leading him to enter a plea to a lesser charge of voluntary manslaughter after remand.

The State argues, and we agree, that when the Kansas Supreme Court reversed Scaife's conviction for murder in the first degree, all previous errors as to that charge were cured, and prosecution on the remanded charge began anew. Because it is fundamental to any claim under K.S.A. 60-1507(b) that prejudice to a defendant must result from the errors alleged, any allegations of error asserted by Scaife that may have impacted his original first-degree murder conviction were cured when the Supreme Court vacated his conviction and remanded for a new trial. See *State v. Carr,* 300 Kan. 1, 252, 331 P.3d 544 (2014).

Additionally, should error have infected the subsequent proceeding, then a collateral challenge under K.S.A. 60-1507 would not be based on the same grounds asserted in Scaife's present motion. Hypothetically, if Scaife had been convicted and sentenced on the reversed count of murder in the first degree and if he had retained and exercised all of his avenues of review, a subsequent 60-1507 motion would relate to the alleged errors that only could have occurred *after* the Kansas Supreme Court reversed the initial conviction of murder in the first degree. That Scaife instead entered into a plea deal for voluntary manslaughter on remand, therefore, does not bear on the finality of the convictions originally affirmed by our Supreme Court. Indeed, Scaife's plea deal itself served to cure any deficiencies in his subsequent 60-1507 motion that he may have complained of relating to the remanded charge, further divorcing it from Scaife's affirmed convictions. See *State v. Edgar,* 281 Kan. 30, 40, 127 P.3d 986 (2006) ("[T]he general rule

in Kansas [is] that a plea is a waiver of all defects or irregularities in the proceedings prior to the plea.").

Accordingly, we hold that Scaife's K.S.A. 60-1507 motion filed January 6, 2010, was untimely as he had 1 year from the date of the Supreme Court's mandate, or until September 24, 2009, to file his motion.

Affirmed.