No. 119,311

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FELIPE M. GONZALEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

The district court may extend the one-year time limitation for a postsentence motion to withdraw a plea only if the defendant shows excusable neglect. K.S.A. 2018 Supp. 22-3210(e)(2).

2.

Excusable neglect under K.S.A. 2018 Supp. 22-3210(e)(2) requires something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind. It requires some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his or her attorney.

3.

A defense attorney must advise a client whether a conviction likely will lead to deportation if that effect can be readily determined. When deportation is less clear, the attorney need only inform the noncitizen client that an uncertain risk exists of adverse immigration consequences. *Padilla v. Kentucky*, 559 U.S. 356, 367-69, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

1

4.

In this case, the acknowledgment of rights and entry of plea form that defendant received during his plea hearing, reviewed with his attorney, understood, and signed, satisfied the *Padilla* requirements, as its language clearly identified deportation as a likely outcome instead of a mere abstract possibility.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed May 31, 2019. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

GARDNER, J.: Felipe Gonzalez pleaded guilty to various criminal charges, was granted probation, and then violated the terms of his probation. The district court revoked his probation and imposed a modified sentence. After serving that sentence, Gonzalez was ordered to be deported from the United States.

Gonzalez later filed an untimely postsentence motion to withdraw his plea, arguing his trial attorney had failed to tell him about the effect his guilty plea could have on his immigration status. Gonzalez also claimed he did not know that as a permanent resident noncitizen he would be treated differently than a United States citizen. The district court denied the motion finding it untimely. It found that Gonzalez' ignorance of his status and of the law did not rise to the level of excusable neglect as was necessary to consider the merits of his untimely motion. Because we agree that Gonzalez made no showing of excusable neglect, we affirm.

2

FACTUAL AND PROCEDURAL BACKGROUND

In 2012, the State charged Gonzalez with multiple offenses:

- possessing a controlled substance;

- driving under the influence;

- driving with a suspended license;

- transporting an open container;

- making an illegal left turn;

- failing to maintain a single lane; and

- failing to signal a lane change.

Gonzalez pleaded guilty to all charges, some of which were felonies, without entering a plea agreement. During his plea hearing and as part of his plea, Gonzalez was given an acknowledgement of rights form which stated: "If I am not a United States citizen, I understand that a conviction of a felony offense most likely will result in my deportation from the United States." He signed it.

The district court sentenced Gonzalez to 16 months' imprisonment and 12 months' postrelease supervision but granted him 12 months' probation. Gonzalez filed no direct appeal of his sentence or convictions. When Gonzalez violated his probation in 2013, the district court revoked his probation and ordered him to serve a modified sentence of eight months in prison with a six-month concurrent jail term.

After serving that sentence, Gonzalez was ordered to be deported from the United States in 2016. In 2017, Gonzalez moved to withdraw his plea, arguing that he had not been told that his plea could result in his deportation. Gonzalez conceded that he had signed an acknowledgment of rights form during his plea and that it warned that a felony

3

conviction could affect his legal status. But Gonzalez asserted that neither his attorney nor the district court had specifically discussed deportation with him. And he claimed that he had had little time during his plea hearing to review the form before he signed it.

The district court held a preliminary hearing on Gonzalez' motion to withdraw his plea. Gonzalez requested an evidentiary hearing but the State objected, arguing Gonzalez' motion was untimely and failed to show excusable neglect. The district court gave Gonzalez the opportunity to submit an amended motion showing excusable neglect.

Gonzalez' amended motion claimed his neglect was excusable because at the time of his plea, he thought he was a lawful permanent resident noncitizen entitled to the same protections as a United States citizen. Gonzalez asserted that his misunderstanding was reinforced when Immigration and Customs Enforcement (ICE) released him after having initially detained him. As a result, he thought he could not be deported and did not believe otherwise until the court ordered him to be deported in December 2016.

The district court denied Gonzalez' motion without an evidentiary hearing. It found:

- By the time Gonzalez' probation was revoked, Gonzalez was aware of the risk of deportation because of the ICE hold on him;
- Gonzalez' failure to appreciate or investigate the consequences of his plea after his ICE detention was simple ignorance of the law that did not rise to the level of excusable neglect; and
- Gonzalez' signed acknowledgment at the plea hearing showed his awareness of the risk of his deportation.

The district court concluded that Gonzalez failed to show excusable neglect and so denied his untimely motion to withdraw his plea. Gonzalez timely appeals.

4

THE DISTRICT COURT PROPERLY DENIED GONZALEZ' UNTIMELY POSTSENTENCE
MOTION TO WITHDRAW HIS PLEA

Gonzalez argued to the district court that he should be allowed to withdraw his plea because his attorney failed to inquire into his immigration status and did not adequately advise him of the consequences of his plea as it related to his immigration status, in violation of *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). Gonzalez acknowledges that his motion to withdraw his plea was filed outside the applicable one-year filing limitation. However, he argues excusable neglect for the untimeliness of his motion because he was unaware that he could be deported as a consequence of his plea until he was ordered deported in 2016.

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2018 Supp. 22-3210(d)(2). Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). But because the district court summarily denied Gonzalez' postsentence motion to withdraw his plea without taking additional evidence, our review is de novo. This is because we have the same access to the motions, records, and files as does the district court. *State v. Fritz*, 299 Kan. 153, 154-55, 321 P.3d 763 (2014).

As noted above, our statute permits a district court to allow a defendant to withdraw his or her plea after sentencing to prevent manifest injustice. But a postsentence motion to withdraw a plea must be filed within one year of either:

- "(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or"

- "(B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition." K.S.A. 2018 Supp. 22-3210(e)(1).

See *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013). The court may extend this one-year time limitation only "upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2018 Supp. 22-3210(e)(2).

Gonzalez was sentenced on July 16, 2012, and he did not appeal. So he had until July 30, 2013, to file his postsentence motion to withdraw his plea. See K.S.A. 2018 Supp. 22-3210(e)(1)(A) (stating postsentence motion to withdraw plea must be brought within one year of termination of appellate jurisdiction); K.S.A. 2018 Supp. 22-3608(c) (providing 14 days to perfect appeal after judgment of the district court). Gonzalez, however, did not file his motion until almost four years later—March 13, 2017. Gonzalez concedes that his motion to withdraw his plea was filed outside the one-year statutory time limit. Because Gonzalez' motion was untimely, the district court could review it only if Gonzalez showed excusable neglect in failing to timely file his motion.

Excusable neglect requires "something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind." *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 65, 523 P.2d 351 (1974). "'Excusable neglect requires some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney.'" *State v. Davisson*, 303 Kan. 1062, 1069, 370 P.3d 423 (2016) (quoting *Whitefish Credit Union v. Sherman*, 367 Mont. 103, 109, 289 P.3d 174 [2012]).

Although neither our statutes nor our published Kansas cases define excusable neglect in the context of a postsentence motion to withdraw a plea under K.S.A. 2018

Supp. 22-3210(e)(2), panels of this court have relied on the following definition in determining similar cases:

> "'"[E]xcusable neglect . . . A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the par[t]y's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party." Black's Law Dictionary 1133 (9th ed. 2009).

> "'This definition is consistent with Kansas cases applying K.S.A. 60-206 and K.S.A. 60-260, both of which use the term excusable neglect. See *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, 406-07, 532 P.2d 1276 (1975); *Wilson v. Miller*, 198 Kan. 321, 322-23, 424 P.2d 271 (1967). . . . Although these definitions are found in civil cases, our court has conversely examined criminal cases when defining "manifest injustice" under K.S.A. 60-1507(f)(2), which is part of the civil code. See *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007).'" *State v. Romero*, No. 112,891, 2016 WL 463783, at *2-3 (Kan. App. 2016) (unpublished opinion) (appealing order denying untimely postsentence motion to withdraw a guilty plea).

See *State v. Reed*, No. 111,663, 2015 WL 4716290, at *3-4 (Kan. App. 2015) (unpublished opinion).

We are guided by those definitions here.

Gonzalez' argument relies heavily on the United States Supreme Court's holding in *Padilla*, an ineffective assistance of counsel case. Padilla's attorney gave him false assurance that his conviction would not result in his removal from this country. The Court held that the defense attorney's failure to advise his or her client that a conviction would lead to deportation was constitutionally deficient performance. The Court recognized that basic competence requires a criminal defense attorney to advise a noncitizen client whether a conviction likely will lead to deportation if that effect can be

readily determined. When deportation is less clear, however, the attorney is not expected to perform to the standards of an expert in immigration law and need only inform the client that an uncertain risk exists of adverse immigration consequences. 559 U.S. at 368-69. Gonzalez argues that his counsel never explicitly counseled him about the effect his plea would have on his immigration status even though *Padilla* predated his plea by several years.

But this is not an ineffective assistance of counsel case and Gonzalez' counsel did not advise him incorrectly, as did the attorney in *Padilla*. More importantly, the record shows that Gonzalez received proper warning of the likelihood of his deportation, satisfying *Padilla'*s requirements. True, Gonzalez may not have subjectively realized that his deportation was imminent until the court ordered him to be deported in December 2016. But the record establishes that he was made aware when he entered his guilty plea that his legal status in the United States was at risk and that he would most likely be deported as a result of his plea. The acknowledgement of rights and entry of plea form that Gonzalez signed was enough to satisfy *Padilla*'s requirements, as its language clearly identified deportation as a likely outcome instead of a mere abstract possibility. It stated: "If I am not a United States citizen, I understand that the conviction of a felony offense most likely will result in my deportation from the United States." We have repeatedly held this form sufficient for this purpose. See, e.g., *Romero*, 2016 WL 463783, at *3 (finding no excusable neglect); *State v. Montes-Jurado*, No. 105,564, 2013 WL 1444321, at *4 (Kan. App. 2013) (unpublished opinion) (finding no good cause shown to withdraw plea); *State v. Lowe*, No. 103,678, 2012 WL 139264, at *4 (Kan. App. 2012) (unpublished opinion) (finding no manifest injustice). We do so again here.

The district court asked Gonzalez if he had reviewed the acknowledgment of rights and entry of plea form with his attorney and whether he understood its terms. Gonzalez answered that he had. Gonzalez signed the acknowledgment during his plea hearing, and the transcript shows that Gonzalez knew and understood its terms. Although

8

the district court or counsel could have chosen to do more, as in *State v. Laicer*, No. 112,087, 2015 WL 5036916, at *6 (Kan. App. 2015) (unpublished opinion), where deportation was discussed extensively at both the plea hearing and the sentencing hearing, what was done was legally sufficient.

This brings us to Gonzalez' challenge to the district court's application of the maxim that ignorance of the law is no excuse. The district court seemingly referenced *Davisson* by holding that Gonzalez' "head in the sand" approach was not enough to show excusable neglect. In *Davisson*, a prisoner argued excusable neglect for his untimely motion to withdraw a plea based upon his ignorance of the ability to bring the action. The defendant argued only that "he did not know about the option to withdraw his guilty plea or its statutory deadline—*i.e.*, that he was ignorant of the law." 303 Kan. at 1069. The Supreme Court rejected this argument and held that ignorance of a statute, of a court rule, or of the existence of a legal remedy is not enough to establish excusable neglect to overcome the statute of limitations. 303 Kan. at 1069-70. It found "'[t]he maxim that ignorance of the law is no excuse is well established, longstanding, and widely known.'" 303 Kan. at 1068.

Gonzalez argues that his case is distinguishable from *Davisson* because he is not claiming ignorance of the law. Instead, he was ignorant of the need to withdraw his plea due to a combination of the following facts:

- his misunderstanding of his legal status;
- his counsel's failure to address that status with him in relation to his plea, as required by *Padilla*; and
- his arrest and release by ICE.

Gonzalez thought he was a permanent resident alien and had the same rights and privileges as a United States citizen. His belief that he could not be deported was

9

strengthened when ICE released him after having detained him, so he did not anticipate deportation as a possible consequence of his plea. But Gonzalez points to no facts he was unaware of at the time of his plea—instead he voluntarily and with knowledge of the facts pleaded guilty and now claims ignorance or mistake as to the legal effect of those facts. But his claim of ignorance is refuted by the clear terms of the acknowledgment of rights form he signed.

To show he was confused about his immigration status, Gonzalez points to his probation revocation hearing. There, Gonzalez stated he was "legal here." Although Gonzalez' statement may or may not reflect that he misunderstood his immigration status when his probation was revoked, Gonzalez did not assert then, or at the time of his plea, or in his brief on appeal that he is a United States citizen. Nor does he assert that as a permanent resident noncitizen he has rights equivalent to those of a United States citizen. Instead, "a lawful permanent resident has fewer rights than a citizen." *United States v. Huitron-Guizar*, 678 F.3d 1164, 1166-67 (10th Cir. 2012) (explaining the elaborate ascending scale of constitutional rights). Gonzalez, a noncitizen, by signing the acknowledgment of rights form at the time of his plea, received clear warning that his deportation was likely.

Gonzalez also argues the fact that ICE released him after having detained him made him think he could not be deported. But Gonzalez has not shown how ICE's release warrants that conclusion. That ICE had detained him could just as easily suggest Gonzalez was aware that his criminal convictions could jeopardize his stay here. But any doubt on that score was later resolved by the express warning in the acknowledgment of rights form that Gonzalez signed and said he understood.

We agree that Gonzalez failed to show excusable neglect as is necessary to permit him to file his motion to withdraw his plea beyond the statutory one-year time limitation.

10

The district court correctly held that his motion to withdraw his plea was procedurally barred.

Affirmed.