NOT DESIGNATED FOR PUBLICATION

No. 121,054

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LEE DAVIS IV,
*Appellant*.

MEMORANDUM OPINION

Appeal from Brown District Court; JOHN L. WEINGART, judge. Opinion filed May 1, 2020. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kevin M. Hill*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and SCHROEDER, JJ.

PER CURIAM: Over three years after his convictions and sentences for second-degree murder and abuse of a child, Lee Davis IV filed a plea withdrawal motion claiming, among other things, his counsel was incompetent. The district court denied his motion as untimely. Davis appeals, arguing the one-year time limit does not apply to him and he established excusable neglect justifying consideration of the merits of his motion to withdraw plea. After a review of the record, we disagree and affirm.

1

The State initially charged Davis on March 6, 2013, with first-degree murder and abuse of a child relating to the death of his four-year-old son. Davis later entered into a plea agreement in which he agreed to plead no contest to amended charges of second-degree murder and abuse of a child. Davis also agreed that if his criminal history score was not D, then the State would charge him in a separate case with an additional misdemeanor to raise his score to D. Parenthetically, we note the State did charge Davis with misdemeanor battery in a separate case. Davis pled no contest to this charge and was sentenced to 30 days in the county jail with credit for time served. Finally, Davis agreed to waive his right to appeal his convictions and sentences, provided the sentences were within the presumptive guidelines.

At Davis' plea hearing, the district court discussed the plea agreement and waiver of rights with Davis. Davis confirmed he understood his rights and pled no contest to second-degree murder and abuse of a child. The district court explained to Davis that he was waiving the right to appeal his convictions, provided the sentences were within the sentencing guidelines. Following Davis' acknowledgment, the district court accepted Davis' plea and found him guilty.

On June 28, 2013, the district court sentenced Davis to 200 months' imprisonment for second-degree murder and 34 months' imprisonment for abuse of a child, with each sentence to run consecutive to the other. Additionally, the district court informed Davis of his right to appeal within 14 days. Davis signed a form that advised him of his right to appeal and indicated he did not wish to pursue that right. Davis did not file a direct appeal.

On January 12, 2017, Davis filed a pro se K.S.A. 60-1507 motion attacking his conviction because of incompetent counsel, prosecutorial misconduct, judicial

2

misconduct, and civil conspiracy. The district court appointed counsel to represent Davis. On July 6, 2017, counsel filed a plea withdrawal motion in this case and a motion in the misdemeanor battery case to set aside that conviction for lack of jurisdiction. In this case's motion, Davis incorporated the arguments made in his pro se K.S.A. 60-1507 motion—excusable neglect explained his failure to file the plea withdrawal motion within one year of his sentencing. He argued excusable neglect existed because he did not receive a copy of the plea hearing transcript until 2017 and the judge and his plea counsel told him he could not file any appeal in his case. In a written memorandum decision, the district court denied Davis' motion to withdraw plea as untimely.

Davis timely appeals the denial of his motion to withdraw plea.

## DID THE DISTRICT COURT ERR IN DENYING DAVIS' POSTSENTENCING PLEA WITHDRAWAL MOTION AS UNTIMELY?

Davis presents three arguments to explain why the district court erred in denying his plea withdrawal motion. First, Davis argues the one-year time limit in K.S.A. 2019 Supp. 22-3210(e)(1) does not apply to him because he never filed a direct appeal and the time limit does not begin to run until after the time to file his appeal ends. Second, Davis argues that if the statute does apply to him, then the district court did not make a finding on excusable neglect when it denied his motion. Finally, Davis asserts he demonstrated excusable neglect because the district court and his attorney incorrectly informed him that he had no right to file any appeal and he was actively seeking an attorney to challenge his conviction.

The State counters the one-year time limit in the absence of a direct appeal begins to run after the time limit to file an appeal expires. Second, the State argues the district court applied the correct standard because Davis did not provide any basis to withdraw

3

his plea. Finally, the State contends Davis did not establish excusable neglect for not filing his motion within a year.

*Standard of Review*

The interpretation and application of a statute is a question of law subject to de novo review. *Schoenholz v. Hinzman*, 295 Kan. 786, 791, 289 P.3d 1155 (2012); *State v. Benavides*, 46 Kan. App. 2d 563, 565, 263 P.3d 863 (2011).

> "When interpreting a statute, a court first attempts to discern legislative intent through the statutory language, giving common words their ordinary meanings. When the language is plain and unambiguous, the court must give effect to its express language . . . and will not speculate about legislative intent and will not read the statute to add something not readily found in it. It is only when the statute's language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain its meaning. [Citations omitted.]" *Nauheim v. City of Topeka*, 309 Kan. 145, 149-50, 432 P.3d 647 (2019).

When a district court summarily denies a postsentence motion to withdraw plea, we review the decision de novo "because we have the same access to the motion, records, and files as does the district court." *State v. Gonzalez*, 56 Kan. App. 2d 1225, 1228, 444 P.3d 362 (2019), *rev. denied* 311 Kan. ___ (February 20, 2020).

A.    *The one-year time limit applies to Davis' motion.*

Davis argues the plain language of K.S.A. 2019 Supp. 22-3210(e)(1) does not limit the time a defendant has to file a postsentencing plea withdrawal motion when the defendant failed to file a direct appeal. Davis claims the clock never started to run on his motion because he never filed an appeal.

4

Appellate jurisdiction must be invoked within 14 days after the judgment of the district court. K.S.A. 2019 Supp. 22-3608(c); see *Scaife v. State*, 51 Kan. App. 2d 577, 581, 350 P.3d 1 (2015) (party has 14 days to perfect appeal). Once 14 days pass, appellate jurisdiction is terminated.

K.S.A. 2019 Supp. 22-3210(d)(2) permits a defendant to file a postsentencing plea withdrawal motion to correct manifest injustice. That motion

> "must be brought within one year of: (A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or the issuance of such court's final order following the granting of such petition." K.S.A. 2019 Supp. 22-3210(e)(1).

A district court may extend the time limit "only upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2019 Supp. 22-3210(e)(2). Because Davis did not file a direct appeal, he argues there was never any appellate jurisdiction to terminate. Davis asserts that if the Legislature wanted the one-year time limit to apply to defendants who did not directly appeal, then it could have specifically said so in K.S.A. 2019 Supp. 22-3210(e)(1).

Several panels of our court have addressed the one-year time limit for a postsentencing plea withdrawal motion in instances where the defendant failed to file an appeal. All reached the same conclusion: Appellate jurisdiction terminates—and the one-year time limit begins to run—after the time to file an appeal passes. See *Gonzalez*, 56 Kan. App. 2d at 1229 (stating defendant had 1 year and 14 days from sentencing to file motion to withdraw plea and holding his postsentence plea withdrawal motion was untimely for filing almost 4 years later); *State v. Turner*, No. 119,105, 2019 WL 2306894, at *3 (Kan. App.) (unpublished opinion) (stating appellate jurisdiction ended 14 days after sentencing when defendant did not appeal and 1-year deadline to file plea

5

withdrawal motion began running on that date), *rev. denied* 310 Kan ___ (December 18, 2019); *Speer v. State*, No. 115,782, 2017 WL 2494989, at *9 (Kan. App. 2017) (unpublished opinion) (same); *State v Stevenson*, No. 113,854, 2016 WL 6138728, at *2 (Kan. App. 2016) (unpublished opinion) (same). There are more but we choose not to cite them all.

Davis acknowledges these decisions but argues we should not follow them as their discussion on this issue merely amounts to nonbinding dicta. Davis also asserts *Speer* and *Stevenson* did not cite any authority to support their decisions and *Gonzalez*' citation to K.S.A. 2018 Supp. 22-3210(e)(1)(A) and K.S.A. 2018 22-3608(c) does not support a finding that the one-year time limitation begins to run once the time for appeal expires. We disagree.

While we are not bound by these prior decisions, we agree with their reasoning. K.S.A. 2019 Supp. 22-3608(c) plainly states the time to appeal expires after 14 days. K.S.A. 2019 Supp. 22-3210(e)(1) plainly states the one-year time limit for plea withdrawal motions begins to run upon the expiration of the time to appeal. Accordingly, the wording of these statutes demonstrates the Legislature's desire to place a one-year time limit on a defendant's ability to withdraw a plea. Davis' effort to create an exception to that rule for defendants who either intentionally chose not to file an appeal or negligently did not appeal runs contrary to the legislative intent as expressed in the language of these statutes. Davis' suggestion that there be no time limit in instances where a defendant fails to file an appeal would create a loophole so large as to effectively allow all defendants to escape the consequence for not timely filing a direct appeal contrary to plain language of K.S.A. 2019 Supp. 22-3210(e)(1) and K.S.A. 2019 Supp. 22-3608(c).

6

Accordingly, we hold Davis had one year from the date his appeal rights expired to file his motion to withdraw plea. Because he filed his motion more than three years after that date, his motion was untimely.

B.    *The district court applied the appropriate standard.*

Davis also argues that if we determine K.S.A. 2019 Supp. 22-3210(e)(1) does apply to him, then the district court erred because it did not determine if excusable neglect existed but instead based its decision on the merits of Davis' argument. Because the district court did not make findings on excusable neglect, Davis asks us to remand the case to the district court so the district court can apply the proper standard.

K.S.A. 2019 Supp. 22-3210(e)(2) allows a district court to extend the one-year time limit "only upon an additional, affirmative showing of excusable neglect by the defendant."

The district held a hearing on Davis' motion to withdraw his plea, and both sides argued whether excusable neglect existed to allow Davis to file his motion out of time. After hearing argument, the district court took the issue under advisement. The district court subsequently issued a written memorandum decision in which it did not discuss excusable neglect. Instead, the district court dismissed Davis' motion as untimely because Davis was always represented by competent counsel, informed of his right to appeal, and agreed not to appeal.

Even though the district court did not make a specific finding on the existence of excusable neglect, the law likely does not require the district court to do so. Previous panels of our court have held the finding of manifest injustice, which allows a defendant to withdraw a plea, is a condition precedent—which the defendant must satisfy—to the determination of the existence of excusable neglect. See *State v. Allen*, No. 107,708, 2013

7

WL 2991139, at *5 (Kan. App. 2013) (unpublished opinion); *State v. Adkins*, No. 106,289, 2012 WL 3171836, at *3 (Kan. App. 2012) (unpublished opinion). "In short, the trial court applies the excusable neglect standard only after manifest injustice has been shown." *Allen*, 2013 WL 2991139, at *5. If the defendant does not show manifest injustice, then the defendant has also failed to establish excusable neglect. See *State v. Cortez-Dorado*, No. 118,683, 2018 WL 6580091, at *2 (Kan. App. 2018) (unpublished opinion); *Allen*, 2013 WL 2991139, at *5; *Adkins*, 2012 WL 3171836, at *3. But see *Cortez-Dorado*, 2018 WL 6580097, at *3 (Standridge, J., concurring) (manifest injustice showing not precondition to examining excusable neglect).

In its memorandum opinion, the district court addressed the merits of Davis' motion. "'[M]anifest injustice' [is] something obviously unfair or shocking to the conscience." *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). Although the district court used the words manifest injustice, it found Davis' claims lacked merit because he had been represented by competent counsel, had been informed of his right to appeal, and had agreed not to appeal. If the claims lacked merit, they cannot be "obviously unfair or shocking to the conscience." *Barahona*, 35 Kan. App. 2d at 608-09. Therefore, Davis did not show manifest injustice and, as a result, did not satisfy the condition precedent to excusable neglect. We hold the district court applied the appropriate standard to Davis' plea withdrawal motion.

C.    *Davis failed to demonstrate excusable neglect.*

Finally, Davis argues he should still prevail even if we hold the district court applied the proper legal standard because he demonstrated excusable neglect for not filing his plea withdrawal motion sooner.

Again, the one-year time limit to file a postsentence plea withdrawal motion may be extended "only upon an additional, affirmative showing of excusable neglect by the

8

defendant." K.S.A. 2019 Supp. 22-3210(e)(2). "Excusable neglect requires 'something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind.' *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 65, 523 P.2d 351 (1974)." *Gonzalez*, 56 Kan. App. 2d at 1229. The *Gonzalez* panel relied on Black's Law Dictionary to define excusable neglect:

> "'A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the par[t]y's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.' Black's Law Dictionary 1133 (9th ed. 2009)." 56 Kan. App. 2d at 1229-30.

The *Gonzalez* panel found this definition consistent with Kansas civil cases applying K.S.A. 60-206 and K.S.A. 60-260, which both use the term excusable neglect, and guided itself by those definitions. 56 Kan. App. 2d at 1230. A defendant cannot demonstrate excusable neglect by claiming that he was unaware of the law. See *State v. Davisson*, 303 Kan. 1062, 1069, 370 P.3d 423 (2016).

In his brief, Davis gives us five reasons why he demonstrated excusable neglect before the district court. First, Davis claims the district court and Davis' counsel misinformed him he had no right to file any appeal, which led Davis to believe that included collateral attacks as well as direct appeals. This assertion is not supported by the record. The plea agreement included a handwritten provision where Davis agreed to waive the right to appeal his convictions and sentences; it did not mention any waiver of collateral attacks. At the plea hearing, the district court discussed the plea agreement with Davis, asking if he understood he would waive his right to appeal his convictions if the sentence was within the sentencing guidelines. Davis said he understood. At no point in the plea agreement or plea hearing did anyone tell Davis that by pleading no contest to the charges, he gave up the right to file a collateral attack on his conviction. Davis also

9

signed a document entitled "Explanation of Right to Appeal," which explained his rights to an appeal. Davis' ignorance of the fact that he retained the ability to file a plea withdrawal motion or a K.S.A. 60-1507 motion is not sufficient to establish excusable neglect. See *Davisson*, 303 Kan. at 1069.

Second, Davis argues it took considerable time for him to obtain a transcript of the plea hearing despite frequent requests for discovery. Davis claims he needed that transcript to learn about the errors made by the district court and his counsel at the hearing. But this argument ignores Davis' own presence at the hearing. Prior to obtaining any transcript, Davis would have already heard and been aware of anything that occurred. Moreover, the earliest request contained in the record of Davis seeking the plea hearing transcript is in his K.S.A. 60-1507 motion, which included an attached letter from Davis' plea counsel responding to Davis' request for copies of his criminal case with a stamp dated October 22, 2014. Davis was sentenced on June 28, 2013. The reply letter from counsel is dated more than one year after Davis' sentencing. Additionally, Davis' earliest request in the record to the district court is a letter dated September 8, 2016, more than three years after sentencing. Even if Davis had diligently pursued his appeal, the record demonstrates his quest did not begin until after the statutory time limit expired. Davis offers no compelling reason why his diligent pursuit did not begin until after the time limit had run.

Third, Davis argues he showed incredible diligence in pursuing his appeal because he contacted several lawyers and legal aid groups to pursue his appeal. However, a review of the letters attached to his K.S.A. 60-1507 motion reveals that these communications all occurred after the one-year time limit expired. The KU Innocence Project responded to his request on July 29, 2015. A private attorney responded on July 29, 2015. The Washburn Law Clinic explained its inability to help Davis on August 12, 2015. The Midwest Innocence Project responded to Davis and sent him an application for its services on September 30, 2015. Finally, Davis asked Legal Services for Prisoners to

contact the Appellate Defender Office on his behalf on February 25, 2016. Davis' argument that he diligently pursued representation to file an appeal is not persuasive in the face of such pursuit not starting until two years after his plea.

Fourth, Davis argues the fact that he only had between 1 hour and 40 minutes and 7 hours and 45 minutes per week to work on his appeal is alone a factor that should justify extending the deadline. Davis' 60-1507 motion stated these time limitations were a problem when he began preparing his pro se K.S.A. 60-1507 motion in September 2016. September 2016 is more than three years after his sentencing and over two years after the one-year time limit expired. On that basis alone, Davis cannot use his time limitation as a reason to demonstrate excusable neglect. Further, his limited time per week was due to his incarceration. Allowing the limited time to demonstrate excusable neglect would likely open the floodgates and allow any incarcerated defendant filing pro se motions to demonstrate excusable neglect.

Finally, Davis argues he satisfied excusable neglect because he filed this present motion within one month of receiving the transcripts of his plea hearing. Davis' promptness in filing his K.S.A. 60-1507 motion or his plea withdrawal motion cannot demonstrate excusable neglect when Davis cannot provide a reasonable explanation why he waited for over three years after his sentence to file either action.

Davis failed to demonstrate excusable neglect to extend the deadline to file his plea withdrawal motion. The district court did not err in denying Davis' motion to withdraw plea.

Affirmed.