NOT DESIGNATED FOR PUBLICATION

No. 122,805

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSE ARELLANO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed September 3, 2021. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: Jose Arellano pleaded guilty to various offenses in April 2009, including possession of cocaine. Arellano is not a United States citizen, and a conviction for possession of cocaine is a deportable offense that also renders a person permanently ineligible for reentry into the country. Arellano attempted to withdraw his plea in 2012, but the district court denied that request. He was removed to Mexico in April 2013.

In July 2019, Arellano filed a second motion to withdraw his plea in an effort to remove the impediment to his reentry into the United States. The district court denied

1

Arellano's motion, finding it was filed outside the one-year statutory timeframe for filing plea-withdrawal motions and noting that Arellano had not provided an explanation to excuse his untimely filing. Arellano appeals this decision, pointing to several efforts his wife has made between 2012 and 2019 seeking legal counsel regarding the interplay of his immigration proceedings and his conviction. While we appreciate the extent of these efforts, they do not explain the crux of the procedural barrier at issue—why Arellano did not move to withdraw his plea before the statutory timeframe for such relief expired in 2010. Thus, after carefully reviewing the record and the parties' arguments, we affirm the district court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

Following a December 2007 traffic stop, the State charged Arellano with possession of cocaine, transportation of an open container of alcohol, and failure to provide proof of liability insurance. A conviction for possession of cocaine—as a violation of the federal Controlled Substances Act—is classified as an offense requiring deportation for noncitizens. See 8 U.S.C. § 1227(a)(2)(B)(i) (2018). Such a conviction also makes a person ineligible to reenter the United States. See 8 U.S.C. § 1182(a)(2)(A)(i) (2018). Arellano is not a United States citizen and was not otherwise authorized to be in the country.

Though Arellano was already at risk for removal due to his undocumented immigration status, his attorney attempted to negotiate a plea deal that would avoid immigration consequences—but to no avail. In April 2009, Arellano pleaded guilty to all charges, apparently in the hope of expediting his case and being placed on probation to minimize the chance of notice by United States Immigration and Customs Enforcement (ICE). When he entered into his plea agreement, he signed a form titled "Defendant's Acknowledgment of Rights and Entry of Plea," which described the rights he would

2

relinquish by entering a plea; this included a notice that a felony conviction would likely result in deportation.

After Arellano entered his plea, his attorney sent him a letter confirming his convictions and the date of his sentencing hearing. That letter also included the following summary of the discussion between Arellano and his attorney concerning Arellano's immigration status:

> "Although I had hoped to have your charges amended to avoid any potential problems with the I.C.E., I was not able to make much progress with the D.A. After some discussion, you decided to go ahead with the plea offer made by the State. The reason for this decision is to hopefully get your probation resolved and get your case out of the court system before I.C.E. has a chance to take any action concerning your immigration status. It is a calculated risk to proceed in this way, but you are subject to deportation at any time regardless, and getting involved with the state government in a criminal case of this nature is only to draw unwarranted attention, regardless of the results."

At Arellano's sentencing hearing in May 2009, the district court ordered him to serve 12 months' probation with an underlying 10-month prison sentence. Arellano did not appeal. Though the State alleged Arellano violated his probation shortly after sentencing, it did not act on that violation until October 2012, when he was arrested for unrelated charges. In November 2012, the court dismissed the alleged probation violation, found that Arellano satisfied his term of probation, and dismissed the new charges. But Arellano remained in custody due to an immigration detainer.

That same month, and through different counsel, Arellano filed a motion to withdraw his plea based on the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). *Padilla* held that the Sixth Amendment right to effective assistance of counsel requires an attorney to inform a criminal defendant of possible immigration consequences before entering a plea

agreement. 559 U.S. at 366-74. As an extension of this reasoning, Arellano argued that his trial attorney's failure to refer him to an immigration attorney prevented him from entering a knowing and voluntary plea.

The district court denied the plea-withdrawal motion. See K.S.A. 2020 Supp. 22-3210(e)(2) (requiring plea-withdrawal motions to be filed within a year after the conclusion of a criminal case absent a showing of excusable neglect). The court also found Arellano had not shown manifest injustice to set aside the plea, particularly because he had known about potential removal consequences, regardless of whether the attorney referred him to an immigration attorney. Arellano appealed the court's decision. But shortly after Arellano filed a notice of appeal, the United States Supreme Court held *Padilla* does not apply retroactively. *Chaidez v. United States*, 568 U.S. 342, 358, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013). Following this ruling, Arellano abandoned his appeal.

While he was litigating the 2012 plea-withdrawal motion, Arellano was also undergoing the ICE removal process. During the ICE proceedings, Arellano requested voluntary departure—a remedy that allows noncitizens to leave the country of their own accord, rather than by removal, and potentially avoids time limitations on reentry. Arellano then learned that his conviction for possession of cocaine made him permanently ineligible to reenter the United States. See 8 U.S.C. § 1182(a)(2)(A)(i) (2012); 21 U.S.C. § 802(6) (2012); 21 U.S.C. § 812, Sched. II, (a)(4) (2012). Arellano was removed to Mexico in April 2013.

In July 2019, Arellano filed a second motion to withdraw his plea—the subject of this appeal. In addition to asserting his innocence, Arellano's second motion modified his *Padilla* argument. In his previous motion, Arellano had claimed that his attorney failed to refer him to an immigration attorney to discuss his case. In his present motion, Arellano claimed his attorney coerced him into entering the plea agreement (by indicating the

judge or the prosecutor could call immigration authorities if the case remained pending) and failed to inform him that his conviction would result in a lifetime bar to reentering the country. Arellano also submitted an affidavit stating he had attempted to contact his trial attorney but had learned the attorney was indefinitely suspended from practicing law in 2011. See *In re Doudin*, 292 Kan. 83, 249 P.3d 1190 (2011).

After Arellano filed his motion, the district court granted a limited evidentiary hearing to determine whether Arellano's 2019 motion could be heard outside the one-year statutory deadline. At the hearing, Arellano's wife testified about the multiple attorneys she contacted since his October 2012 arrest to resolve the immigration restrictions. Eventually, Arellano's wife explained, she was counselled that the best way to challenge the reentry bar was to reopen Arellano's criminal case in state court.

The court asked several questions during the hearing as to why Arellano had not raised his current claims in his first plea-withdrawal motion. The court observed that a person is not generally permitted to assert claims in a second filing that could have been brought in a previous lawsuit. And the court noted that the reentry ban was in place in 2009 when Arellano entered his plea. At the end of the hearing, the court found Arellano had not shown why his questions regarding reentry could not have been raised in his earlier filing. Ultimately, the court ruled that Arellano had not "met his burden of proving that he's entitled to essentially get his foot in the door"—that is, to have his case heard on its merits.

The court later memorialized its denial of Arellano's motion in a journal entry. Although it acknowledged that Arellano's wife made substantial efforts to seek legal help, the court noted his current plea-withdrawal motion was filed roughly 10 years after sentencing. The court again noted that the reentry ban was in place in 2009 and could have been raised in Arellano's 2012 motion to withdraw his plea; analogizing the issue to principles of claim preclusion, the court found that Arellano had not shown why he

should be able to raise his arguments now. At the close of its journal entry, the court denied the motion, finding Arellano "ha[d] not met his burden of proving excusable neglect." Arellano appeals.

DISCUSSION

Before sentencing, a person may withdraw a guilty plea by demonstrating good cause for his or her request. K.S.A. 2020 Supp. 22-3210(d)(1). But after sentencing, an elevated standard applies; the person wishing to withdraw a plea must show manifest injustice would result if the plea remained in place. K.S.A. 2020 Supp. 22-3210(d)(2). In either event, the person seeking to withdraw a plea bears the burden of persuading the court that he or she is entitled to relief. *State v. Adams*, 311 Kan. 569, 574, 465 P.3d 176 (2020).

Motions to withdraw pleas filed after sentencing must comply with certain timing requirements. In 2009, the Kansas Legislature amended K.S.A. 22-3210 to require these postsentence motions to be filed within one year after the conclusion of the movant's direct appeal. L. 2009, ch. 61, § 1, now codified as K.S.A. 2020 Supp. 22-3210(e)(1). After this statutory deadline has passed, a court can only consider a motion to withdraw a plea when the defendant has made "an additional, affirmative showing of excusable neglect" to justify the late filing. K.S.A. 2020 Supp. 22-3210(e)(2); see *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013).

This court has previously described excusable neglect as "something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind." *State v. Gonzalez*, 56 Kan. App. 2d 1225, Syl. ¶ 2, 444 P.3d 362 (2019), *rev. denied* 311 Kan. 1048 (2020). Put more practically, a person striving to show excusable neglect must provide some justification for the delay "beyond mere carelessness or

6

ignorance of the law on the part of the litigant or his or her attorney." 56 Kan. App. 2d 1225, Syl. ¶ 2.

Arellano concedes that he did not file his most recent plea-withdrawal motion until 2019, roughly nine years beyond the statutory deadline in K.S.A. 2020 Supp. 22-3210(e)(1). Thus, before the district court could reach the merits of his motion, Arellano had to demonstrate excusable neglect to explain his late filing. See K.S.A. 2020 Supp. 22-3210(e)(2). The district court found that Arellano had failed to make this showing and denied his motion.

We review a district court's denial of a postsentence motion to withdraw a plea for an abuse of discretion. *State v. Davisson*, 303 Kan. 1062, 1065, 370 P.3d 423 (2016). A court abuses its discretion when no reasonable person would take the view adopted by the trial court or when its decision is based on an error of law or fact. 303 Kan. at 1065. This discretion is especially important in cases where the district court has held evidentiary hearings, as appellate court judges were not present to observe witnesses' demeanor and are not in a position to reweigh the evidence.

Arellano argues that this court should give no credence to the district court's statement in its journal entry that he had failed to show excusable neglect. He asserts that the comments the court made from the bench at the close of the evidentiary hearing focused on principles of claim preclusion, not excusable neglect. Thus, Arellano asserts, the district court's conclusion regarding excusable neglect in the journal entry was an inadvertent "drafting error."

Our review of the record undercuts this argument. The district court was aware of the need to determine whether Arellano had shown excusable neglect to allow the court to consider his motion; it granted an evidentiary hearing for that purpose. In her opening remarks, Arellano's attorney explained that the hearing was limited "to only the issue of

7

excusable neglect and whether Mr. Arellano is able to provide . . . enough facts to establish that excusable neglect exists to even get to the merits of his motion." The parties and the court reiterated this point throughout the hearing—as the court noted, the purpose of the proceeding was to "address[] the issue of the timeliness," further "narrowing the issue . . . to excusable neglect."

Though the district court's statements at the close of the hearing did not include the specific phrase "excusable neglect," the court nevertheless evaluated the reasons for Arellano's delay in filing the current motion. The court noted that a conviction of possession of cocaine rendered a person ineligible to reenter the United States at the time Arellano entered his plea. Even if his original attorney did not inform him of the reentry ban during the plea negotiations, Arellano was aware that his plea could lead to his removal from the country. The court noted that this potential consequence only took on some urgency in 2012 and 2013—after Arellano's marriage and the birth of his daughter—when he was arrested for committing a new offense, subjected to an immigration hold, and eventually removed from the country.

On appeal, Arellano emphasizes that the court's journal entry discussed this matter in terms of claim preclusion, stating that Arellano is barred from raising the current claims in his motion because those could have—and should have—been raised in his first motion. Arellano argues that preclusive principles should not apply in this case, as there is no statutory prohibition against successive motions to withdraw a plea. But he acknowledges that the Kansas Supreme Court has previously affirmed the denial of a motion to withdraw a plea based on the principle of res judicata. See *State v. Kelly*, 291 Kan. 868, 875, 248 P.3d 1282 (2011) (finding no "mechanism whereby the doctrine of res judicata may be circumvented to permit a relitigation of the plea withdrawal issue").

We find Arellano's focus on the district court's discussion of claim preclusion to be misdirected. Our review of the court's journal entry and comments at the evidentiary

hearing shows that its claim-preclusion discussion was not an evaluation of the merits of Arellano's motion. Rather, the court was analyzing whether Arellano had provided an explanation that would allow the court to consider a motion filed nine years after the statutory deadline had passed—especially since he had already filed a motion to withdraw his plea in 2012. This concern was well placed.

When a defendant has filed a plea-withdrawal motion outside the one-year timeframe in K.S.A. 2020 Supp. 22-3210(e)(2), "courts must decide whether [the] defendant has shown excusable neglect *before* reaching the question of whether manifest injustice requires that a defendant be permitted to withdraw a plea." *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). In other words, the "procedural timeliness fork-in-the-road comes first" in the analysis. 313 Kan. at 248. Thus, if a motion is not timely and the movant provides no explanation of excusable neglect to justify the late filing, the district court must deny the motion without considering its merits.

Arellano's explanation for his delay in filing his current motion includes two components. *First*, he asserts, consistent with the substantive claims raised in his motion, that his defense attorney misled him regarding the immigration consequences of his plea and convinced him to enter a plea in an effort to avoid ICE's notice. As a result, Arellano states that he did not learn of the reentry ban until the removal process in 2012 and 2013. *Second*, Arellano notes that once he learned of his inability to reenter the country, he and his wife diligently consulted with multiple lawyers and associations to determine what options were available to him to change his immigration status, which eventually resulted in the filing of the current motion.

But neither explanation constitutes excusable neglect that would justify filing a motion beyond the timeframe in K.S.A. 2020 Supp. 22-3210(e)(2). To start, the parties agree that the reentry ban under federal immigration law was in effect when Arellano entered his plea in 2009. Kansas courts have long held that ignorance of the law does not

9

constitute excusable neglect. See *Davisson*, 303 Kan. at 1067 (quoting *School District v. State*, 29 Kan. 57, 67 [1882]) ("'ignorance of [the] law excuses no one'"); *Gonzalez*, 56 Kan. App. 2d 1225, Syl. ¶ 2 (excusable neglect "requires some justification for an error beyond mere . . . ignorance of the law"). Thus, the fact that Arellano's attorney did not specifically inform him that his conviction for possession of cocaine would render him ineligible to reenter the United States does not allow a court to consider his motion outside the timeframe set by Kansas law.

And there is no question that Arellano was aware that a conviction for possession of cocaine was a deportable offense when he pleaded guilty in 2009, even if he did not know of its impact on his ability to reenter the country. The district court found, based on the evidence presented at the hearing, that the removal and reentry consequences of Arellano's plea were not a pressing concern for him until the ICE proceedings were underway in 2012 and 2013. At that time, especially since Arellano had a daughter and was in a serious relationship (he married his wife shortly after his removal), the consequences were "stepped up." But this explanation—changes in Arellano's priorities—also does not meet the standard for excusable neglect. Accord *Gonzalez*, 56 Kan. App. 2d at 1229-30 (quoting Black's Law Dictionary 1133 [9th ed. 2009]) (noting excusable neglect does not include a delay made due to a "'par[t]y's own carelessness'" or "'inattention'" to "'the court's process'"). Moreover, as the district court found, there is no reason why Arellano's current claims could not have been raised in his 2012 motion to withdraw his plea, which was litigated concurrently with the removal proceedings. See *Kelly*, 291 Kan. at 874-75.

The district court observed that since Arellano's removal from the United States in 2013, he and his wife have engaged in substantial efforts to seek legal assistance regarding his immigration status. After consulting with multiple attorneys and other associations, Arellano decided that the best course of action was to "reopen his [criminal] case." But the existence of these efforts does not address the threshold issue before us:

10

why the claims in Arellano's current motion—regarding communications with his attorney leading up to his plea—could not have been raised in a timely manner. Given these circumstances, the district court did not abuse its discretion when it found Arellano had not shown excusable neglect that would permit consideration of his untimely filing.

We recognize that, by all accounts, Arellano's removal and inability to reenter the United States have been extremely difficult for both him and his family. But for the reasons we have explained, the district court did not err when it denied Arellano's motion to withdraw his plea under K.S.A. 2020 Supp. 22-3210(e).

Affirmed.