No. 121,572

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CAESAR K. LOUIS,
*Appellant*.


SYLLABUS BY THE COURT


1.

Postsentencing, a district court may set aside a conviction and allow a defendant to withdraw a plea to correct manifest injustice. But a defendant must bring a postsentencing motion to withdraw plea within one year after the termination of appellate jurisdiction of the defendant's direct appeal. This time limit may be extended only upon an additional, affirmative showing of excusable neglect by the defendant.


2.

Excusable neglect is a failure—which the law will excuse—to take some proper step at the proper time, not because of the party's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.


3.

Excusable neglect requires something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind. Ignorance of the law does not constitute excusable neglect.

4.

A movant must allege in a plea withdrawal motion itself sufficient grounds for relief, including the existence of excusable neglect when the motion is filed beyond the one-year time limit. If a defendant's plea withdrawal motion makes no showing of excusable neglect, then summary denial is proper.

5.

When a postsentence plea withdrawal motion alleges ineffective assistance of counsel, the defendant must meet the constitutional test for ineffective assistance of counsel to establish manifest injustice. Whether counsel was ineffective is determined by applying the two-part test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which requires an examination of whether the attorney's performance fell below an objective standard of reasonableness and whether there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different.

6.

According to the Kansas Supreme Court in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020), the portion of K.S.A. 2018 Supp. 21-5415(a)(1) proscribing criminal threat if a threat of violence is made in reckless disregard for causing fear is unconstitutionally overbroad because it can apply to statements made without the intent to cause fear of violence. The same reckless disregard portion of the earlier version of criminal threat contained in K.S.A. 2009 Supp. 21-3419(a)(1) is also unconstitutionally overbroad.

7.

The United States Supreme Court in *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), did not directly address whether the First Amendment tolerates a conviction for making a threat even though there was no intent to cause fear.

8.

According to K.S.A. 2019 Supp. 21-6810(d)(9), prior convictions for a crime that has since been declared unconstitutional by an appellate court shall not be used for criminal history scoring purposes.

9.

The legality of a sentence is controlled by the law in effect at the time of sentencing. A sentence is not illegal because of a change in the law that occurs after the sentence is pronounced. A party may seek and obtain a benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced.

10.

Under the facts of this case, the defendant is not entitled to the benefit of a change in the law as reckless criminal threat was declared unconstitutional in 2019 and the defendant's sentence became final in 2014. The defendant's sentence is not illegal, even though his criminal history contains a prior conviction for criminal threat, because at the time the sentence was imposed reckless criminal threat was not unconstitutional.

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed October 23, 2020. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER and POWELL, JJ.

POWELL, J.: Caesar K. Louis appeals the district court's summary denial of his second motion to withdraw plea. He claims the district court erred by not conducting an evidentiary hearing to determine whether excusable neglect justified the untimely filing of his motion. He also asserts, for the first time, that we should remand his case to the district court so it may determine if his prior 2009 conviction for criminal threat was wrongly included in his criminal history. Louis claims the presentence investigation (PSI) report is unclear as to whether this prior conviction was for reckless criminal threat, which has been declared unconstitutional by the Kansas Supreme Court in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020). If so, Louis argues it was wrongly included in his criminal history, making his criminal history score incorrect and his sentence illegal.

After a careful review of the record, we conclude Louis fails to establish the requisite excusable neglect necessary to justify the untimely filing of his second motion to withdraw plea. Alternatively, we find no merit to his claim that his plea was not knowingly and understandably made. As to his allegation that his sentence is illegal, we hold Louis' sentence is not illegal because reckless criminal threat had not yet been declared unconstitutional by our Supreme Court at the time he was sentenced or before his sentence became final. Thus, this prior conviction was properly included in his criminal history and his sentence is not illegal. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

As part of a plea deal with the State, Louis pled guilty to a reduced charge of second-degree murder, aggravated burglary, and aggravated robbery. In his acknowledgement of rights and entry of plea, Louis said he knew of no reason his mental competence should be questioned. Louis listed that he was taking a drug called Haldol.

4

When asked by the district court at the plea hearing, Louis explained Haldol helped him focus and kept his thoughts from racing. The medicine did not affect Louis' ability to understand his rights or comprehend his plea. The district court accepted Louis' plea and found him guilty.

Louis' PSI report included in his criminal history a prior 2009 conviction for criminal threat and calculated his criminal history score as C. On October 22, 2013, the district court sentenced Louis to a presumptive prison term of 345 months' imprisonment.

Louis appealed his sentence, and the Kansas Supreme Court summarily affirmed his presumptive sentence and dismissed his appeal. The mandate was issued on December 3, 2014.

On November 23, 2015, Louis filed a pro se motion to withdraw his guilty plea. Among other things, Louis claimed that Haldol impaired his mental faculties and rendered him incompetent, causing him not to knowingly and voluntarily enter his plea because he did not fully comprehend his circumstances and the consequences of his plea. Counsel was appointed to represent Louis at the plea withdrawal hearing.

At the hearing on his motion, Louis' counsel tried to raise a claim that plea counsel had been ineffective, but the State objected on the grounds that claim had not been included in Louis' original motion and was time barred. The district court agreed and refused to consider it.

Louis testified his plea counsel told him he would be convicted of first-degree murder if he did not plea and claimed plea counsel did not know how to defend him. Louis admitted he told the district court that Haldol did not affect his ability to understand his rights or aid in his defense. Louis testified that when he arrived at the El Dorado Correctional Facility, the medication was ended. Louis felt like he was waking up

from a haze and was shocked his sentence was longer than what he believed he had received.

Dr. Katherine Girrens testified she prescribed Haldol to Louis because she believed he had episodic agitation and Haldol had low side effects. Dr. Girrens prescribed 1 mg out of a maximum dose of 100 mg.

Louis' plea counsel testified Haldol made Louis calmer and more focused. Plea counsel informed Louis that Louis' concession he was present at the house where the aggravated robbery and aggravated burglary took place would make it hard to avoid a felony murder conviction.

The district court denied Louis' plea withdrawal motion, finding Louis fairly, understandingly, knowingly, and voluntarily entered his guilty plea. The district court also found, despite its refusal to consider Louis' ineffective assistance of counsel claim, the evidence presented at the hearing did not establish plea counsel had been ineffective.

On March 25, 2019, Louis filed a second pro se motion to withdraw his plea. Louis again asserted his plea had not been knowingly made because he was suffering from a mental disorder and had been under the influence of psychotropic drugs. Louis further claimed his plea counsel had been ineffective for not developing a mental defect defense, not investigating his mental disorder, and not calling an expert witness vital to Louis' defense. Finally, Louis argued the trial court should have granted his earlier motion for new counsel due to conflict of interest. The district court summarily denied Louis motion, finding it had failed to present a substantial question of law or fact, was time barred, and was an abuse of remedy.

Louis timely appeals.

I.    DID THE DISTRICT COURT ERR IN SUMMARILY DENYING LOUIS' PLEA
      WITHDRAWAL MOTION?

Louis argues the district court erred in summarily denying his second plea withdrawal motion and asserts a hearing should have held because his allegations of ineffective assistance of counsel required evidence to prove if they were true or false. Louis also argues the district court erred in finding his motion was time barred instead of analyzing the timeliness of his motion under the proper standard of excusable neglect. Finally, Louis claims his filing of successive motions was not an abuse of remedy because exceptional circumstances justified filing a second motion.

*Standard of Review*

When a district court summarily denies a defendant's postsentence plea withdrawal motion, we exercise de novo review because we "'have the same access to the motion, records, and files as the district court.' Like the district court, we must determine whether [the] 'motion, records, and files conclusively show that [the defendant] is entitled to no relief.' [Citations omitted.]" *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013).

*Analysis*

Postsentencing, a district court may set aside a conviction and allow a defendant to withdraw a plea to correct manifest injustice. K.S.A. 2019 Supp. 22-3210(d)(2). A defendant must bring a postsentencing motion to withdraw plea within one year after the termination of appellate jurisdiction of the defendant's direct appeal. K.S.A. 2019 Supp. 22-3210(e)(1). This time limit may be extended "only upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2019 Supp. 22-3210(e)(2).

7

Louis' direct appeal ended on November 4, 2014, and the mandate was issued December 3, 2014. He filed his first plea withdrawal motion on November 23, 2015. This motion was timely, but after a hearing the district court denied it, and Louis did not appeal the district court's adverse ruling. Louis then filed his current motion to withdraw plea, his second, on March 25, 2019. Louis admits his motion falls well outside of the one-year time limit. Given the untimeliness of Louis' second motion, he was required to make an "affirmative showing of excusable neglect." See K.S.A 2019 Supp. 22-3210(e)(2).

"Excusable neglect requires 'something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind.' *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 65, 523 P.2d 351 (1974)." *State v. Gonzalez*, 56 Kan. App. 2d 1225, 1229, 444 P.3d 362 (2019), *rev. denied* 311 Kan. ___ (February 20, 2020). The *Gonzalez* panel relied on Black's Law Dictionary to define excusable neglect:

> "'A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the par[t]y's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.' Black's Law Dictionary 1133 (9th ed. 2009)." 56 Kan. App. 2d at 1229-30.

"'[I]gnorance of the [law] does not constitute excusable neglect . . . .'" *State v. Davisson*, 303 Kan. 1062, 1069, 370 P.3d 423 (2016).

Unfortunately for Louis, his second and untimely motion to withdraw plea stumbles out of the gate because his motion makes no claim about why excusable neglect existed. His brief also makes no attempt to show excusable neglect. Louis acknowledges that unpublished opinions issued by other panels of our court have held summary denial is appropriate when a plea withdrawal motion does not raise an additional, affirmative

8

showing of excusable neglect. See *State v. Marshall*, No. 112,875, 2016 WL 197744, at *4 (Kan. App. 2016) (unpublished opinion); *State v. Baker*, No. 106,171, 2012 WL 5392094, at *2 (Kan. App. 2012) (unpublished opinion). But Louis argues those cases were based on a misinterpretation of *State v. Jackson*, 255 Kan. 455, 874 P.2d 1138 (1994).

According to Louis, *Jackson* did not examine the excusable neglect provision of the statute but, instead, held the manifest injustice provision did not require the appointment of counsel or an evidentiary hearing where the plea withdrawal motion did not raise substantial questions of law, triable issues of fact, or conclusively demonstrate the movant was not entitled to relief. Louis claims these unpublished cases erred by conflating the merits of a movant's claims with the procedures required to consider them. We disagree.

*Jackson* holds a movant must allege in the motion itself sufficient grounds for relief and due process does not require the appointment of counsel and a hearing unless that is done. 255 Kan. at 461. That same logic applies to the existence of excusable neglect. If a defendant's plea withdrawal motion makes no showing of excusable neglect, then due process does not require a hearing and summary denial is proper. See *Marshall*, 2016 WL 197744, at *4; *Baker*, 2012 WL 5392094, at *2; see also *State v. Williams*, 303 Kan. 605, 608, 366 P.3d 1101 (2016) (motion presented no reason to excuse delay); *Moses*, 296 Kan. at 1128 (motion made no attempt to affirmatively show excusable neglect). Because Louis' motion to withdraw plea failed to affirmatively show excusable neglect, it is untimely and procedurally barred. The district court did not err in denying the motion. Because we find Louis' motion to withdraw plea untimely, we need not address Louis' other allegations of procedural error concerning the denial of his motion.

Alternatively, even if Louis had established excusable neglect to allow consideration of his untimely motion, the district court could allow Louis to withdraw his

9

plea only to correct manifest injustice. See K.S.A. 2019 Supp. 22-3210(d)(2). Manifest injustice is something "obviously unfair or shocking to the conscience." *Noyce v. State*, 310 Kan. 394, 402, 447 P.3d 355 (2019). Although it did not use the term "manifest injustice" in denying the motion, the district court found Louis failed to present a substantial question of law or fact. A hearing on a plea withdrawal motion is limited only to those instances when the defendant raised substantial issues of fact or law. When the record conclusively shows the defendant is not entitled to relief, the motion must be denied. "Mere conclusions of the defendant are insufficient to raise a substantial issue of fact when no factual basis is alleged or appears in the record." *State v. Fritz*, 299 Kan. 153, 156, 321 P.3d 763 (2014).

Louis' motion provided several reasons why he should be allowed to withdraw his plea. On appeal, Louis has streamlined his argument to three allegations, all of which claim he did not receive effective assistance from his plea counsel: (1) Plea counsel failed to develop a mental defect defense; (2) plea counsel failed to investigate Louis' disability before recommending he enter a plea; and (3) plea counsel failed to consult an expert witness vital to Louis' defense.

When a postsentence plea withdrawal motion alleges ineffective assistance of counsel, the defendant must meet the constitutional test for ineffective assistance of counsel to establish manifest injustice. Whether counsel was ineffective is determined by applying *Strickland*'s two-part test and evaluating "(1) whether the attorney's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different." *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014); see *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A strong presumption exists that "counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' When . . . the conduct at issue precede[s] a guilty plea, prejudice means a reasonable probability that, but for the

10

deficient performance, the defendant would have insisted on going to trial instead of entering the plea. [Citation omitted.]" *Kelly*, 298 Kan. at 970.

Louis' ineffective assistance of counsel claims are lacking in the necessary details to satisfy manifest injustice. First, Louis claims plea counsel failed to develop a mental defect defense. But Louis' motion does not explain what mental defect he suffered from. His motion claims he was incompetent to enter a guilty plea "given his mental health history which includes psychotic problems" but does not allege what that history or psychotic problems were.

Second, Louis' allegation that he has a mental defect contradicts the record. His acknowledgement of rights and entry of plea, which Louis signed, states he knew of no reason his mental competence should be questioned. At the plea hearing, the district court discussed the effects of Haldol with Louis. Louis told the district court Haldol helped him focus and did not affect his ability to understand his rights. When asked, Louis told the district court he understood the consequences of his guilty plea and the rights he was waiving. Until his second plea withdrawal motion, Louis never suggested he suffered from a mental defect. In fact, one of his claims in his first plea withdrawal motion was that he did not want to take Haldol because he was depressed and did not have a mental disease.

Louis also claims his plea counsel was ineffective for failing to investigate his disability before recommending he enter a plea. But again, Louis does not explain what his disability is. Presumably, Louis means his alleged mental defect. However, Louis failed to mention any alleged mental defect at his plea hearing or in his first plea withdrawal motion. The record also contradicts his claim because, at the first plea withdrawal hearing, plea counsel explained he saw no reason to investigate the effects of Haldol on Louis because plea counsel saw it had a positive effect on him. Plea counsel found Louis was able to focus during their discussions.

11

Louis' final ineffective assistance of counsel claim is plea counsel failed to consult an expert witness vital to Louis' defense. Louis does not explain who the expert witness is or how the witness was vital. Without more information, it is impossible to determine if plea counsel was deficient for not calling an expert witness. Additionally, as there was no actual trial, we fail to see how there was any opportunity for plea counsel to call an expert witness to testify.

Finally, we note the district court asked Louis at the plea hearing if he was satisfied with his counsel's representation. Louis informed the district court he was. Moreover, although the district court ruled Louis could not amend his first plea withdrawal motion to include a claim for ineffective assistance of counsel, evidence concerning plea counsel's competence was presented and the district court found based on this evidence that Louis was represented by competent counsel.

Louis' ineffective assistance of counsel claims lack merit. Louis cannot overcome the strong presumption that his counsel rendered adequate assistance given the record before us, and it cannot be said his plea counsel's performance fell below an objective standard of reasonableness. Thus, Louis is not entitled to relief. We affirm the district court's denial of Louis' second motion to withdraw plea.

II.    IS LOUIS' SENTENCE ILLEGAL?

In his supplemental brief, Louis argues for the first time his sentence is illegal because one of the convictions used to calculate his criminal history score is for criminal threat. Not long ago, the Kansas Supreme Court held in *State v. Boettger*, 310 Kan. 800, 822, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020), that the reckless disregard portion of the criminal threat statute was unconstitutional. Louis argues that because the criminal history listed in his PSI report fails to state whether his prior conviction was for intentional or reckless criminal threat, we should vacate his sentence and remand the case

to the district court to determine whether Louis was previously convicted of intentional or reckless criminal threat.

Even though Louis is only now raising this issue, we may consider it because an illegal sentence claim may be raised at any time. See K.S.A. 2019 Supp. 22-3504(a); *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). "Whether a sentence is illegal is a question of law subject to unlimited review." *State v. Fowler*, 311 Kan. 136, 139, 457 P.3d 927 (2020).

*Analysis*

"Prior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes." K.S.A. 2019 Supp. 21-6810(d)(9). Louis has a prior conviction for criminal threat. At the time of his conviction, a criminal threat was any threat to:

> "Commit violence communicated with intent to terrorize another, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such terror or evacuation, lock down or disruption in regular, ongoing activities." K.S.A. 2009 Supp. 21-3419(a)(1).

K.S.A. 2018 Supp. 21-5415(a)(1), the version addressed in *Boettger*, defines criminal threat as any threat to:

> "Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities."

13

Louis acknowledges the criminal threat statute under which he was convicted is worded differently than the version found unconstitutional by the Kansas Supreme Court in *Boettger*.

In *Boettger*, the Kansas Supreme Court addressed a constitutional challenge to the portion of the 2018 version of the statute criminalizing a threat communicated "in reckless disregard of causing fear." 310 Kan. at 801. *Boettger* relied on *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), to hold the reckless criminal threat portion of K.S.A. 2018 Supp. 21-5414(a)(1) was unconstitutionally overbroad:

"*Black* found specific intent was necessary to convict under the Virginia cross-burning statute at issue in that case. See 538 U.S. at 360. The Court stated '[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.' *Black*, 538 U.S. at 360. It strains the plain meaning of the Court's language to conclude that 'statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals' are not made 'with the intent of placing the [particular individual or group of individuals] in fear of bodily harm or death.' *Black*, 538 U.S. at 359-60. A person who '*means* to communicate a *serious* expression of an *intent* to commit an act of *unlawful violence*' is aware of the illegality of the violence he or she purportedly *intends* to commit and makes a *serious* expression of that intent, which he or she *meant* to communicate. See *Black*, 538 U.S. at 360. This definition conveys that the conduct is intentional.

"Under *Black*, the portion of K.S.A. 2018 Supp. 21-5415(a)(1) allowing for a conviction if a threat of violence is made in reckless disregard for causing fear causes the statute to be unconstitutionally overbroad because it can apply to statements made without the intent to cause fear of violence. See K.S.A. 2018 Supp. 21-5202(h) and (j) (defining 'intentionally' and 'recklessly' in Kansas criminal statutes). The provision significantly targets protected activity. And its language provides no basis for distinguishing circumstances where the speech is constitutionally protected from those

14

where the speech does not warrant protection under the First Amendment." *Boettger*, 310 Kan. at 822-23.

While the language of the 2009 version differs slightly from the 2018 version, the analysis does not change. When holding reckless criminal threat unconstitutional, our Supreme Court focused on the required mental state to be criminally convicted of making a threat and held specific intent was necessary to criminalize a threat. 310 Kan. at 822-23. The version of the statute under which Louis was convicted criminalized a threat committed with reckless disregard, just as the 2018 version did. *Boettger*'s requirement of specific intent also applies to the 2009 version of the statute. Therefore, the reckless disregard portion of K.S.A. 2009 Supp. 21-3419(a)(1) is also unconstitutionally overbroad.

Having established that the 2009 version of reckless criminal threat is also unconstitutional, we turn to Louis' criminal history. The State bears the burden of proving a defendant's criminal history by a preponderance of the evidence. *State v. Obregon*, 309 Kan. 1267, Syl. ¶ 4, 444 P.3d 331 (2019). Typically, a PSI report will satisfy the State's burden when a defendant does not object to the inclusion of an offense in his or her criminal history. K.S.A. 2019 Supp. 21-6814(b); *Obregon*, 309 Kan. at 1275. However, "more is required when the summary does not indicate which version" of an offense a defendant has committed, even when there is no objection. 309 Kan. at 1275. When the record on appeal does not contain substantial competent evidence to support a district court's classification of a prior conviction or, as in this case, the inclusion of a prior conviction in an offender's criminal history, a remand is required to allow the district court to determine the propriety of including the prior conviction in the offender's criminal history. See *State v. Ewing*, 310 Kan. 348, 359-60, 446 P.3d 463 (2019); *Obregon*, 309 Kan. at 1275-76. Here, Louis' PSI report does not show whether his criminal threat conviction was reckless or intentional. Because of this, Louis argues a remand is required.

Standing in the way of Louis' effort at relief is the rule that the legality of a sentence is controlled by the law in effect at the time of sentencing. See *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019) (*Murdock II*). Moreover, a sentence is not illegal because of a change in the law that occurs after the sentence is pronounced. K.S.A. 2019 Supp. 22-3504(c)(1); see also *Murdock II*, 309 Kan. at 590 ("K.S.A. 22-3504 does not say a sentence may *become* illegal at any time."). The Kansas Supreme Court made clear in *Murdock II* that the legality of a sentence is fixed at one point in time—at the pronouncement from the bench:

"Today, we clearly state what we gestured toward in [*State v.*] *Lee*[, 304 Kan. 416, 418, 372 P.3d 415 (2016)]: the legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law.

". . . Put simply, a party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced." 309 Kan. at 591-92.

Although Louis is not on direct appeal and normally would not be eligible to benefit from a change in the law, Louis uses his supplemental brief to launch a preemptory strike against this argument by claiming it does not matter that he is not on direct appeal. Louis asserts the reckless form of criminal threat was potentially unconstitutional due to the United States Supreme Court's opinion in *Black* in 2003, prior to his conviction for criminal threat and well before 2019 when the Kansas Supreme Court issued its *Boettger* opinion.

*Boettger* was the first time the Kansas Supreme Court considered whether a conviction for recklessly making a threat violated the First Amendment to the United States Constitution, though a panel of our court rejected the argument in 2001—two years before *Black*. *Boettger*, 310 Kan. at 808. Our Supreme Court also noted that the United States Supreme Court never explicitly held whether criminalizing the reckless making of a threat violated the First Amendment. In fact, post-*Black* courts have reached different results in determining what type of intent is necessary to pass constitutional muster. See 310 Kan. at 809. Our Supreme Court held *Black* explained the necessary intent to prosecute a threat without violating the First Amendment, but it noted *Black* itself "did not directly address whether the First Amendment tolerates a conviction for making a threat even though there was no intent to cause fear." *Boettger*, 310 Kan. at 812. Ultimately, our Supreme Court held K.S.A. 2018 Supp. 21-5415(a)(1) unconstitutionally overbroad because it criminalizes more than the true threats allowed under *Black* and potentially punishes constitutionally protected speech. *Boettger*, 310 Kan. at 822; see *State v. Johnson*, 310 Kan. 835, 842, 450 P.3d 790 (2019).

The *Boettger* court did not hold that reckless criminal threat was declared unconstitutional in *Black*. Our Supreme Court noted *Black* never addressed whether a person could be convicted for making a threat without an intent to cause fear. *Boettger* also contradicts Louis' claim by reviewing the disagreements among courts on that issue following *Black*. See *Boettger*, 310 Kan. at 812-16. Contrary to Louis' argument, reckless criminal threat was not held unconstitutional in 2003 but in 2019, when the Kansas Supreme Court applied *Black*'s analysis to K.S.A. 2018 Supp. 21-5415(a)(1) and held the reckless disregard portion of the statute was unconstitutionally overbroad. *Boettger*, 310 Kan. at 822.

Because *Boettger* is a subsequent development in the law, occurring after the end of Louis' direct appeal, Louis is not entitled to its benefits. Louis is stuck with the law at the time of his sentencing. When he was sentenced in 2013, both the intentional and

reckless disregard versions of criminal threat were constitutional. Therefore, it does not matter whether Louis' prior conviction was for reckless or intentional criminal threat; the inclusion of either one in his criminal history was proper. Thus, Louis' sentence is not illegal.

Affirmed.