NOT DESIGNATED FOR PUBLICATION

No. 123,806

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER DUANE WALLACE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed September 30, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Christopher Duane Wallace appeals the district court's summary denial of his post-sentencing motion to withdraw his no contest plea to second-degree murder. He seeks a remand for the district court to conduct a full evidentiary hearing on his claims. Finding no error in the district court's handling of the motion or its resolution, we decline Wallace's request and affirm the decision of the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2016, the State charged Christopher Duane Wallace with first-degree murder based on the allegation that he intentionally and with premeditation killed Jennifer Lopez.

At Wallace's preliminary hearing, his retained counsel explained that he required additional time because he intended to consult Dr. Marilyn Hutchinson to assess the viability of a mental disease or defect defense or, alternatively, explore some permutation of an intoxication defense. Not long after, Wallace formally filed his notice of an intent to rely on the existence of a mental disease or defect in accordance with K.S.A. 22-3219(1). The district court then ordered Wallace to undergo a mental health examination with Dr. Mitchell R. Flesher.

The parties engaged in two separate mediations, once in December 2016, and again in February 2017. Shortly after the second meeting, counsel for Wallace informed the court that following discussions, the parties had arrived at plea terms that were mutually palatable and under which Wallace would enter a no contest plea to second-degree murder.

Prior to formal entry of his plea, Wallace assured the court that he had an adequate opportunity to engage in thorough discussions with his attorney about proceeding with a plea, that he was satisfied with his counsel's representation, and he carefully reviewed all the information required for him to enter a knowing and intelligent plea. Wallace also confirmed that he was not under the influence of drugs or alcohol and the court separately reflected that Wallace exhibited no signs of intoxication. Finally, the court noted it harbored no concerns about Wallace's competency.

The State then recited its factual basis for the charge:

2

"[STATE'S COUNSEL]:  Judge, I would also ask the Court to incorporate the evidence it heard at the preliminary hearing held on June 28th, 2016, and in addition to that I would state that on January 18th of 2016, at about 5:20 p.m. a call for service came into the Overland Park 911 system.

"The reporting party, later identified as the defendant here today, Christopher Duane Wallace, advised that he had been high on meth and beat his roommate to death. Mr. Wallace told dispatch that he was no longer hallucinating as he was coming down from a high.

"Mr. Wallace stated his roommate's name was Jennifer and she was not breathing. He was calling from an apartment located in Overland Park, Johnson County, Kansas. Officers arrived shortly thereafter and a female later identified as Jennifer Lopez was found in the hallway with significant head injuries. It was apparent that she had been beaten in the head. She was pronounced dead at 5:31 p.m.

"Mr. Wallace was present when law enforcement arrived and was taken into custody. He was later interviewed by law enforcement at the Overland Park Police station where he did admit to beating Ms. Lopez to death. He indicated he was asleep in a bedroom when he was awakened by Ms. Lopez. He stated that he thought she was a zombie and began attacking her by beating her in the head.

"A search warrant was later obtained and the apartment was processed. A pair of leopard print leggies was found wrapped around Ms. Lopez's neck and a plastic bag had been placed over her face.

"On January 19th, an autopsy was performed on her body in which the coroner concluded that she had died from asphyxia due to strangulation and blunt injuries. The manner of death was homicide.

"For the purposes of this plea, the State would allege that Mr. Wallace intentionally but without premeditation killed Ms. Lopez."

3

When asked if the plea was freely and voluntarily made, Wallace unequivocally responded "Absolutely." The court ultimately accepted Wallace's no contest plea and imposed the sentence the parties contemplated under the plea agreement—203 months in prison followed by 36 months of postrelease supervision.

In August 2018, Wallace filed a pro se motion for an evidentiary hearing pursuant to *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). Within that motion, Wallace expressed a desire for a hearing to develop facts and a record related to allegations of ineffective assistance of counsel:

> "2. [Wallace] pled with [Cornwell] to argue for a charge of Manslaughter due to the dosage of drugs in his system . . . . During a meeting with Wallace, [Cornwell] stated that the charge against Wallace should be involuntary manslaughter . . . . [Cornwell] failed to at least negotiate the probability of an involuntary manslaughter charge.

> "3. [Cornwell] coerced him into entering a plea more favorable to the state, than to [Wallace]. In this sense, [Cornwell] failed to discuss any favorable plea's [*sic*] with [Wallace] other than the plea that came with 2nd Degree Intentional Murder.

> "4. [Cornwell] failed to argue the mitigating circumstances that could have been presented in a pursuit of 'Intoxication Defense.' [Wallace] was under the influence of a heavy amount of Methamphetamine ('Meth'); a very strong and powerful hallucinogenic.

> "5. Knowing that [Wallace's] intoxication levels were high, an expert on hallucinogenics was hired, but the information that this expert witness could have offered was not presented to the court and [Cornwell] failed to present the finding of Dr. Hutchinson to the prosecution the defendant's lack of mental state at the time of offense, which also h[i]ndered his ability to show the effects the drug actually has on a user especially when Dr. Hutchinson's evaluation showed a high []probability that Mr. Wallace could not form the requisite 'intent' based on his inability to form a rational thought while under the influence of this strong hallucinogenic."

4

Notably, Wallace did not request to withdraw his plea, nor did he cite any legal authority addressing plea withdrawals.

In November 2018, counsel was appointed to represent Wallace, but that attorney withdrew a month later. A second attorney was appointed in January of 2019 but also withdrew a few months later.

In March 2019, Wallace filed a pro se motion seeking a new trial based on newly discovered evidence. His request revolved around Dr. Hutchinson's earlier conclusion that Wallace was suffering amphetamine intoxication at the time he killed Lopez, and such intoxication deprived him of the ability to form the required culpable mental state. Wallace then alleged that counsel never shared the results of Dr. Hutchinson's evaluation with him, that he only had the opportunity to review her report for the first time in early October 2018, and the report contained beneficial exculpatory findings. Wallace also cited one case which allegedly stood for the proposition that a defendant's right to a fair trial is violated if expert witness testimony addressing his or her lack of the required mental state is excluded. Wallace also cited a statutory provision which allowed for the presentation of evidence regarding a defendant's lack of the required mental state for the charged offense. Like his previous pro se motion, Wallace never mentioned a desire to withdraw his plea, nor did he cite any legal authority analyzing that issue.

Roughly around July 2020, newly appointed counsel for Wallace filed a motion seeking to withdraw Wallace's plea and, within that motion, counsel argued that Wallace's previous motions should be collectively and liberally construed as assertions to withdraw his plea. Counsel essentially argued that Wallace's trial attorney was ineffective for not reviewing Dr. Hutchinson's and Dr. Flesher's reports with Wallace before the plea hearing. He cited the applicable law which required Wallace to show manifest injustice in order to withdraw his plea post-sentencing, but never acknowledged that the withdrawal request was untimely or tried to make a showing of excusable neglect.

5

The court addressed Wallace's motion at a non-evidentiary hearing and denied his request for relief. In so doing, it found that even if Wallace did not run his eyes through the actual physical reports, he was certainly advised of their contents and the conclusion reached by the physician, yet he remained content to go forward with his plea. According to the court, those facts prohibited a finding of manifest injustice.

Wallace now brings the matter to us to resolve whether the district court denied his motion in error.

ANALYSIS

*The District Court Properly Summarily Denied Wallace's Post-Sentencing Motion to Withdraw His Plea.*

Wallace argues the district court erred in summarily denying his post-sentencing motion to withdraw his plea. He claims he demonstrated both excusable neglect for his untimely motion and manifest injustice, thus, he is entitled to a full evidentiary hearing on his claims.

When a district court summarily denies a motion to withdraw a plea without an evidentiary hearing, we exercise de novo review over that decision. *State v. Smith*, 315 Kan. 124, 126, 505 P.3d 350 (2022). And like the district court, this court determines whether the records, files, and the defendant's motion conclusively show that the defendant is entitled to no relief. 315 Kan. at 126. The movant bears the burden of proving the district court erred in denying the motion to withdraw plea. *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021).

As a preliminary matter, before we can entertain the substance of Wallace's claim, we must first consider whether he has successfully demonstrated that his motion was timely filed. A motion to withdraw plea that is submitted after sentencing must be filed

6

within one year of the later of two events specified in K.S.A. 2020 Supp. 22-3210(e)(1). Because Wallace did not take a direct appeal, the relevant event would then be the date that appellate jurisdiction terminated—which was 14 days after sentencing. See K.S.A. 2021 Supp. 22-3608(c). The district court sentenced Wallace on April 3, 2017, so appellate jurisdiction terminated on April 17, 2017. Thus, the one-year time limit applicable to this case sets the deadline for Wallace's motion to withdraw plea on April 17, 2018.

Wallace's motion to withdraw plea was not filed until July 1, 2020, well beyond the one-year deadline. Even if this court were to very liberally construe his earlier pro se motions as motions to withdraw his plea, which we do not, it would serve no benefit to Wallace as they would still be out of time given that Wallace's first pro se motion was filed in August 2018.

K.S.A. 2020 Supp. 22-3210(e)(2) contains an exception to the one-year limitation and states that a court may extend the limit "only upon an additional affirmative showing of excusable neglect by defendant." "Excusable neglect is a procedural standard that permits a defendant to seek to withdraw a plea out of time." *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). If a defendant moves to withdraw his or her plea beyond that one-year deadline, a court's first step is to assess whether the defendant demonstrated excusable neglect before it can reach the substantive question of whether the relevant standard for permitting the defendant to withdraw a plea has been met. 313 Kan. at 248.

Our Supreme Court has conveyed that excusable neglect "implies something more than unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind" and "requires some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney." *Smith*, 314 Kan. at 127-28. But the court also noted that excusable neglect resists a bright line definition and must be determined on a case-by-case basis. 314 Kan. at 127.

If a defendant fails to establish excusable neglect, the motion is considered untimely and procedurally barred—regardless of the motion's substantive merit. 314 Kan. at 127; *Davis*, 313 Kan. at 248. Excusable neglect must be asserted in the plea withdrawal motion itself, and if the defendant fails to make such a showing, summary denial is proper. *State v. Louis*, 59 Kan. App. 2d 14, Syl. ¶ 4, 476 P.3d 837 (2020); see also *State v. Reed*, No. 111,663, 2015 WL 4716290, at *4 (Kan. App. 2015) (unpublished opinion) ("[T]he question of whether a defendant . . . can show excusable neglect . . . 'must be raised in the motion itself or at least presented to the district court or it will not be considered on appeal.'").

Here, Wallace did not attempt to prove excusable neglect while before the district court through either his pro se pleadings or in the motion to withdraw plea that counsel filed on his behalf. Any attempt to cure this failing by asserting excusable neglect for the first time on appeal constitutes a presentation to the wrong court and conflicts with our prior holdings.

The district court summarily denied Wallace's motion to withdraw his plea based on a lack of manifest injustice, not on a finding that the motion was untimely, and that Wallace failed to carry his burden to establish excusable neglect. But this court may nevertheless affirm the district court's summary denial because it still essentially reached the correct result. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (suggesting appellate courts may affirm district court's decision if district court reached the correct result); see also *O'Quinn v. State*, No. 121,434, 2020 WL 4379045, at *3 (Kan. App. 2020) (unpublished opinion) (even though the district court did not consider the timeliness component, reviewing court affirmed summary denial as right for the wrong reason).

Because Wallace's motion to withdraw plea was untimely and he has made no showing of excusable neglect, the district court's summary denial of that motion was appropriate.

Affirmed.